664 S.E.2d 121

**Dawn SOULSBY (Martinez), Petitioner Below, Appellee,**

v.

**David SOULSBY, Respondent Below, Appellant.**

**No. 33661.**

Supreme Court of Appeals of West Virginia.

Submitted March 12, 2008.

Decided April 4, 2008.

238

G. Nicholas Casey, Jr., Amanda M. Ream, Lewis Glasser Casey & Rollins PLLC, Charleston, WV, for the Appellant.

Ancil G. Ramey, Steptoe & Johnson, PLLC, Charleston, WV, for the Appellee.

DAVIS, Justice.

The appellant herein and respondent below, David Soulsby (hereinafter "Dr. Soulsby"), appeals from an order entered January 12, 2007, by the Circuit Court of Putnam County. By that order, the circuit court denied Dr. Soulsby's appeal from an order entered November 21, 2006, by which the Family Court of Putnam County refused to reconsider its earlier calculation, by order entered August 8, 2006, of Dr. Soulsby's child support obligation for the parties' two minor children.[1] On appeal to this Court, Dr. Soulsby contests the accuracy of this calculation. Upon a review of the parties' arguments, the record designated for appellate

---

1. In its January 12, 2007, order, the circuit court also denied Dr. Soulsby's appeal from the family court's November 8, 2006, order. However, Dr. Soulsby has not renewed his assignments of error from the November 8, 2006, family court order in his appeal to this Court.

consideration, and the pertinent authorities, we affirm, in part, that portion of the circuit court's January 12, 2007, order pertaining to Dr. Soulsby's child support obligation for K.S.[2] We further reverse, in part, that portion of the circuit court's order denying Dr. Soulsby's appeal from the family court's order setting the amount of his child support obligation for D.S. and remand this case for entry of a corrected child support order with respect to D.S. consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The facts underlying the instant appeal are not disputed by the parties. Dr. Soulsby and the appellee herein and plaintiff below, Dawn Soulsby (Martinez) (hereinafter "Mrs. Soulsby"), were married on October 13, 1984. The

2. As is our customary practice in cases involving minors, we will refer to the parties' children by their initials rather than by their full names. *See, e.g., In re Cesar L.,* 221 W.Va. 249, 252 n. 1, 654 S.E.2d 373, 376 n. 1 (2007).

3. The parties also have a third child, a daughter, N.S., born on April 14, 1987, whose support is not at issue in these proceedings. As of the date of the instant proceedings, N.S. is approximately twenty-one years old, K.S. is approximately seventeen years old, and D.S. is approximately eleven years old.

4. The particular details of this custodial arrangement are set forth more fully in the family court's subsequent order entered November 8, 2006:

With respect to K[.S.], the Court finds that K[.S.] is of an age to nominate her guardian and chooses to reside with her Mother. Additionally, K[.S.] is of an age to set her parenting schedule with her Father....

....

... [T]he Court ORDERS the following parenting plan [with respect to D.S.]: ,

(i) Respondent [Dr. Soulsby] shall have parenting time with D[.S.] every weekend except for the 3rd weekend of each month during the school year from Friday after school until Monday morning. The third weekend shall be defined as that weekend where Friday begins on the 15th through the 21st of the month. The Respondent, or his designee, shall pick D[.S.] up from school on Friday and shall transport D[.S.] to school on Monday morning.

(ii) During the Summer vacation period, the Respondent shall provide D[.S.]'s primary residence after his swim team obligations are complete. Completion is deemed by this Court to

instant appeal concerns two children born of this marriage: a daughter, K.S., who was born on October 16, 1990, and a son, D.S., who was born on February 22, 1997.[3] During the parties' marriage, Dr. Soulsby was employed as an orthopedic surgeon, while Mrs. Soulsby was a stay-at-home mother. Thereafter, on or about October 10, 2000, Mrs. Soulsby filed a petition for divorce. The family court granted the parties a divorce by order entered July 31, 2002, and retained jurisdiction to determine issues of child custody and child support.

Following further proceedings, it was determined and stated, in the family court's order of August 8, 2006, that Mrs. Soulsby would have "primary caretaking responsibility for K[.S.,] and the parties [would] have extended shared parenting of D[.S.]"[4] By this order, the family court also determined that

be the "City Meet". Therefore, if D[.S.] is on a Summer swim team, Respondent shall get the same weekend parenting time until after the "City Meet". After the conclusion of the City Meet, D[.S.] shall primarily reside with his Respondent Father and the Petitioner [Mrs. Soulsby] Mother shall receive parenting time every weekend except for the 3rd weekend from Friday afternoon until Monday morning. Again, the [third] weekend shall be defined as that weekend where Friday begins on the 15th through the 21st of the month.

(iii) The Respondent shall be allowed to schedule a two (2) week vacation during his Summerparenting time during which the Petitioner shall not receive her weekend parenting time.

(iv) The Petitioner shall pick D[.S.] up at his Father's residence the weekend before school starts.

(v) With respect to Christmas the Court finds that each parent shall have a portion of this holiday as follows: One parent shall have D[.S.] from the day school is out until noon on Christmas Day. The other parent shall have D[.S.] from noon on Christmas until he goes back to school. The parties shall flip a coin to determine who gets which days this year. Thereafter, they will alternate.

(vi) The Court will NOT change any other holiday.

(vii) Although transportation should not be an issue for regular weekend parenting time during the school year when the Respondent will be picking D[.S.] up from school and delivering him to school on Monday, during the Summer and during the holiday parenting time, the Petitioner shall pick up and deliver D[.S.] from his Father's residence for her parenting time during the summer.

[t]he father [Dr. Soulsby] shall pay the mother [Mrs. Soulsby] the sum of $5579 per month, beginning May 1, 2005, and continuing on the 1st day of each month thereafter until the youngest child reaches 18 or graduates high school, whichever is later (but in no event past age 20). The Court finds child support to be necessary past age 18 due to the high cost of the final year(s) of high school. . . .

The family court arrived at this calculation by applying the child support guidelines for (1) one child under the basic shared parenting formula, with regard to K.S., *i.e.*, $3,033.36, and (2) one child under the extended shared parenting formula, with regard to D.S., *i.e.*, $2,545.86. Adding these two amounts together resulted in the total child support ordered to be paid: $5,579 per month.[5]

Dr. Soulsby moved for a reconsideration of the family court's calculation of child support claiming that applying the guidelines in this manner resulted in a higher monthly child support payment than if the amount of child support due and owing for both of the parties' two minor children had been calculated under either the basic shared parenting formula or the extended shared parenting formula. In this regard, Dr. Soulsby contended that calculating the amount of his child support obligation for both K.S. and D.S. using the basic shared parenting guidelines results in a monthly obligation of $4,423.47; calculating his child support obligation for both K.S. and D.S. using the extended shared parenting guidelines results in a monthly obligation of $3,712.55. Both of these amounts are substantially less than the $5,579 the family court ordered him to pay. Because each of the parties' children has a different parenting

arrangement, Dr. Soulsby suggested that the above two calculations based upon two children per family should be averaged together (($4,423.47 + $3,712.55)/2) in order to accurately reflect the parenting arrangements and to give effect to the incremental increase contemplated by the Legislature; this figure would result in a $4,068.01 monthly child support obligation, which would be $1,511 less per month than the $5,579 monthly child support obligation ordered by the family court.

By order entered November 21, 2006, the family court denied Dr. Soulsby's motion for reconsideration determining its earlier calculation of child support to be correct. Dr. Soulsby appealed this ruling to the circuit court, which refused to consider his petition for appeal by order entered January 12, 2007, finding that the family court had not committed reversible error in its calculation of child support.[6] From this adverse decision, Dr. Soulsby appeals to this Court.

## II.

## STANDARD OF REVIEW

The instant appeal involves a decision by a family court regarding a question of law and a circuit court's refusal to consider an appeal from such ruling.

In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

---

5. In addition to this monthly child support obligation, the family court, by order entered November 8, 2006, also ordered that ,. ·'
   (a) . . . Respondent [Dr. Soulsby] is obligated under the final order and property agreement to provide $500 per month, twelve months of the year, to each child who is in college. Respondent shall make an electronic transfer at the same time every month for said child. The Respondent may choose which day upon which to make this transfer, but, it shall be the same day each month.
   (b) There is, of course, implied in this obligation a corresponding responsibility for the child to

be enrolled during the main school year as a full time student and making reasonable progress towards a degree.
The order does not specifically state whether this college stipend obligation applies to the parties' oldest child, N.S. *See supra* note 3.

6. The circuit court also determined that the family court had not committed reversible error as to Dr. Soulsby's other assignments of error pertaining to rulings contained in the family court's November 8, 2006, order. *See* note 1, *supra*.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004). Moreover, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). *Accord* Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."). We will consider the parties' arguments in light of these standards.

## III.

## DISCUSSION

In this case of first impression we are asked to determine the correct amount of child support that is due and owing when each of the parties' two children have a different parenting arrangement and visitation schedule with the obligor parent. During the proceedings below, the family court determined that the parties' daughter, K.S., was of an age to permit her to decide the amount and type of visitation she wished to have with her father and, thus, essentially awarded her sole custody to Mrs. Soulsby. After considering the report of the treating psychologist and the needs of the parties' son, D.S., the family court determined that although his primary custody should remain with Mrs. Soulsby, D.S. would benefit from extended visitation with his father. Accordingly, the family court calculated Dr. Soulsby's child support obligation (1) by applying the basic shared parenting worksheet, W. Va.Code § 48–13–403 (2001) (Repl.Vol.2004), to K.S., resulting in a monthly obligation of $3,033, and (2) by applying the extended shared parenting worksheet, W. Va.Code § 48–13–502 (2001) (Repl.Vol.2004), to D.S., resulting in a monthly obligation of $2,546, to arrive at a total monthly obligation for both children of $5,579. The family court denied Dr. Soulsby's motion to reconsider this determination, and the circuit court refused his appeal from the family court's ruling.

On appeal to this Court, Dr. Soulsby contends that the amount of child support the family court has ordered him to pay results in an overpayment when compared with the amount of child support he would be required to pay if his support obligation had been calculated for both children under either the basic shared parenting formula or the extended shared parenting formula. In this regard, Dr. Soulsby suggests that the child support guidelines do not calculate the support due for two children at double the rate for one child, but rather apply an incremental increase for the second child and any additional children. Thus, he argues that because the family court calculated his support obligation due for one child under the basic shared parenting formula and for one child under the extended shared parenting formula, he did not receive the benefit of this incremental increase for his second child.

By contrast, Mrs. Soulsby argues that the Legislature has not bestowed upon obligor parents a "multi-child discount" and that the family court correctly applied the child support guidelines as they are written. In support of her argument, Mrs. Soulsby asserts that both the worksheets applicable to basic shared parenting cases, W. Va.Code § 48–13–403, and the worksheets applicable to extended shared parenting cases, W. Va.Code § 48–13–502, speak in mandatory terms, requiring the applicable worksheet to be utilized in the cases to which it applies. Furthermore, Mrs. Soulsby states that, as a whole, the amount of a support obligation derived from the application of the child support guidelines to a particular case is presumptively correct, W. Va.Code § 48–13–101 (2001) (Repl.Vol.2004), and that Dr. Soulsby has not rebutted this presumption. Finally, Mrs. Soulsby suggests that, to the extent the child support statutes do not provide clear guidance under the facts of this case, Dr. Soulsby's recourse is with the Legislature, and not with this Court. *Citing Worley v. Beckley Mech., Inc.*, 220 W.Va. 633, 643, 648 S.E.2d 620, 630 (2007) ("When specific statutory language produces a result argued to be unforeseen by the Legislature, the remedy lies with the Legislature, whose action produced it, and not with the courts. The question of dealing with the situation in a more satisfactory or desirable manner is a matter

of policy which calls for legislative, not judicial, action." (internal quotations and citations omitted)).

■ At issue herein is a matter of the correct interpretation and application of the statutes governing the calculation of child support obligations, W. Va.Code § 48–13–101, *et seq.* As with any matter involving the construction of legislative enactments, we must first discern the legislative intent underlying the statute(s) at issue in order to give full effect to the will of the Legislature. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975). We next must look to the precise words employed by the Legislature in enacting the statute(s) in question. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951). *Accord DeVane v. Kennedy,* 205 W.Va. 519, 529, 519 S.E.2d 622, 632 (1999) ("Where the language of a statutory provision is plain, its terms should be applied as written and not construed." (citations omitted)); Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.,* 144 W.Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."). However, "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew,* 186 W.Va. 693, 414 S.E.2d 454 (1992). *Accord* Syl. pt. 1, *Ohio County Comm'n v. Manchin,* 171 W.Va. 552, 301 S.E.2d 183 (1983) ("Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent").

With respect to the establishment of support obligations for children, the Legislature has recognized and expressed a dual purpose: to provide opportunities for children and, more specifically, to provide uniformity and predictability in calculating the amount of child support obligations. In general, the Legislature has stated with respect to child support that

> [i]t is one of the purposes of the Legislature in enacting this chapter to improve and facilitate support enforcement efforts in this state, with the primary goal being to establish and enforce reasonable child support orders and thereby improve opportunities for children. It is the intent of the Legislature that to the extent practicable, the laws of this state should encourage and require a child's parents to meet the obligation of providing that child with adequate food, shelter, clothing, education, and health and child care.

W. Va.Code § 48–11–101(a) (2001) (Repl.Vol. 2004). Recognizing that children should not be subjected to a different standard of living simply because their parents reside in separate households, it has further been declared that

> [t]he Legislature recognizes that children have a right to share in their natural parents' level of living. Expenditures in families are not made in accordance with subsistence level standards, but are made in proportion to household income, and as parental incomes increase or decrease, the actual dollar expenditures for children also increase or decrease correspondingly. In order to ensure that children properly share in their parents' resources, regardless of family structure, these guidelines are structured so as to provide that after a consideration of respective parental incomes, child support will be related, to the extent practicable, to the standard of living that children would enjoy if they were living in a household with both parents present.

W. Va.Code § 48–13–102 (2001) (Repl.Vol. 2004). More specifically, in regard to the guidelines it has established for the calculation of child support awards, the Legislature has proclaimed that

> [t]his article establishes guidelines for child support award amounts so as to ensure greater uniformity by those persons who make child support recommendations and enter child support orders and to in-

crease predictability for parents, children and other persons who are directly affected by child support orders. There is a rebuttable presumption, in any proceeding before a court for the award of child support, that the amount of the award which would result from the application of these guidelines is the correct amount of child support to be awarded.

W. Va.Code § 48–13–101 (2001) (Repl.Vol. 2004).

To achieve the stated legislative intent, the Legislature has established various guidelines to facilitate the calculation of child support awards. In an attempt to ensure uniformity and predictability, the Legislature has made mandatory the application of the child support guidelines when calculating the amount of a child support obligation.

The guidelines in child support awards apply as a rebuttable presumption to all child support orders established or modified in West Virginia. *The guidelines must be applied to all actions in which child support is being determined* including temporary orders, interstate (URESA and UIFSA), domestic violence, foster care, divorce, nondissolution, public assistance, nonpublic assistance and support decrees arising despite nonmarriage of the parties. *The guidelines must be used by the court as the basis for reviewing adequacy of child support levels in uncontested cases as well as contested hearings.*

W. Va.Code § 48–13–701 (2001) (Repl.Vol. 2004) (emphasis added). Moreover, applying these guidelines to a particular case results in a child support award that is presumptively correct. "The amount of support resulting from the application of the guidelines is presumed to be the correct amount, unless the court, in a written finding or a specific finding on the record, disregards the guidelines or adjusts the award as provided for in section 13–702 [§ 48–13–702]." W. Va.Code § 48–13–203 (2001) (Repl.Vol.2004). *Accords* W. Va.Code § 48–13–101 ("There is a rebuttable presumption, in any proceeding before a court for the award of child support, that the amount of the award which would result from the application of these guidelines is the correct amount of child support to be award-

ed."); W. Va.Code § 48–13–701 ("The guidelines in child support awards apply as a rebuttable presumption to all child support orders established or modified in West Virginia.").

Although application of the guidelines is mandatory and results in a presumptively correct award of child support, courts nevertheless are permitted limited discretion to deviate from the established guidelines when the facts of a particular case do not fall squarely within the confines thereof.

(a) If the court finds that the guidelines are inappropriate in a specific case, the court may either disregard the guidelines or adjust the guidelines-based award to accommodate the needs of the child or children or the circumstances of the parent or parents. In either case, the reason for the deviation and the amount of the calculated guidelines award must be stated on the record (preferably in writing on the worksheet or in the order). Such findings clarify the basis of the order if appealed or modified in the future.

(b) These guidelines do not take into account the economic impact of the following factors that may be possible reasons for deviation:

(1) Special needs of the child or support obligor, including, but not limited to, the special needs of a minor or adult child who is physically or mentally disabled;

(2) Educational expenses for the child or the parent (i.e. those incurred for private, parochial, or trade schools, other secondary schools, or post-secondary education where there is tuition or costs beyond state and local tax contributions);

(3) Families with more than six children;

(4) Long distance visitation costs;

(5) The child resides with third party;

(6) The needs of another child or children to whom the obligor owes a duty of support;

(7) The extent to which the obligor's income depends on nonrecurring or non-guaranteed income; or

(8) Whether the total of spousal support, child support and child care costs subtract-

ed from an obligor's income reduces that income to less than the federal poverty level and conversely, whether deviation from child support guidelines would reduce the income of the child's household to less than the federal poverty level.

W. Va.Code § 48–13–702 (2001) (Repl.Vol. 2004). *Accord* W. Va.Code § 48–13–203 (presuming child support award derived from application of guidelines to be correct "unless the court, in a written finding or a specific finding on the record, disregards the guidelines or adjusts the award as provided for in section 13–702 [§ 48–13–702]").[7] This statutory language plainly states that courts may choose to calculate the amount of child support due and owing in a particular case in a manner that does not strictly comply with the statutory child support guidelines when the facts of that case do not fit squarely within those guidelines. Accordingly, we hold that, pursuant to the plain language of W. Va.Code § 48–13–702(a) (2001) (Repl.Vol. 2004), when a court calculating the amount of a child support obligation in a given case finds application of the guidelines to the facts of that case to be inappropriate, the court "may either disregard the guidelines or adjust the guidelines-based award to accommodate the needs of the child or children or the circumstances of the parent or parents." When a court disregards or deviates from the child support guidelines, "the reason for

the deviation and the amount of the calculated guidelines award must be stated on the record (preferably in writing on the worksheet or in the order)." W. Va.Code § 48–13–702(a).

Turning now to the facts of the case *sub judice,* we are immediately concerned by the family court's strict application of the child support guidelines to calculate Dr. Soulsby's child support obligation regarding his two minor children when the guidelines do not seem to take into consideration the unique, but not uncommon, parenting arrangement and visitation schedule involved in this case. Here, Mrs. Soulsby has primary custody of both K.S. and D.S., but the parenting arrangement and visitation schedule is different for each child: Dr. Soulsby has no, or extremely limited, contact with K.S. as determined by her,[8] while Dr. Soulsby has extensive visitation with D.S. during the school year and extended residential visitation with D.S. during the summer months. The child support guidelines, however, do not appreciate these separate and distinct parenting arrangements and visitation schedules, and strict application of the guidelines to the facts of this case does not achieve an accurate calculation of child support in light of the time each child spends with the obligor and obligee parents.

For example, W. Va.Code § 48–13–204 (2001) (Repl.Vol.2004) specifically states that

---

7. In Syllabus point 3 of *Porter v. Bego,* 200 W.Va. 168, 488 S.E.2d 443 (1997), we afforded a similar construction to the previous version of the statutes establishing guidelines for the calculation of child support awards:

In determining the amount of child support, *W. Va.Code,* 48A–1B–1 [1996] creates a rebuttable presumption that the amount of the award which would result from the application of the Guidelines for Child Support, *W. Va. Code,* 48A–1B–1 to–16 [1997], is the correct amount of child support to be awarded. Any reason for deviation from the Guidelines and the amount of the calculated Guidelines award must be stated on the worksheet or in the order. *W. Va.Code,* 48A–1B–14 [1996].

*Accord* Syl., *Holley v. Holley,* 181 W.Va. 396, 382 S.E.2d 590 (1989) ("When a family law master or a circuit court enters an order awarding or modifying child support, the amount of the child support shall be in accordance with the established state guidelines, set forth in 6 *W. Va.Code*

*of State Rules* §§ 78–16–1 to 78–16–20 (1988), unless the master or the court sets forth, in writing, specific reasons for not following the guidelines in the particular case involved. *W. Va.Code,* 48A–2–8(a), as amended.").

8. The family court specifically found that K.S.'s age was sufficient to permit her to nominate her mother as her guardian and to allow her to determine the amount of time she would spend with her father. *See* note 4, *supra. See also* W. Va.Code § 44–10–4(a) (2004) (Repl.Vol.2004) ("If the minor is above the age of fourteen years, he or she may in the presence of the circuit or family court, or in writing acknowledged before any officer authorized to take the acknowledgment of a deed, nominate his or her own guardian, who, if approved by the court, shall be appointed accordingly."); Syl. pt. 7, in part, *Garska v. McCoy,* 167 W.Va. 59, 278 S.E.2d 357 (1981) (recognizing that "an adolescent fourteen years of age or older … has an absolute right under *W. Va.Code,* 44–10–4 [1923] to nominate his own guardian").

"[t]he calculation of the amount awarded by the support order requires the use of *one of two* worksheets which must be completed for each case. Worksheet A is used for a basic shared parenting arrangement. Worksheet B is used for an extended shared parenting arrangement." (Emphasis added). The parties do not dispute that the parenting plan for the children entails a basic shared parenting arrangement[9] for K.S. and an extended shared parenting arrangement[10] for D.S. However, the statutory language of W. Va. Code § 48–13–204 does not indicate which worksheet should be completed when both types of parenting arrangements are involved in a single case.

Additionally, the referenced worksheets, themselves, suggest a mandatory application to their relative cases. In this regard, the provision relating to Worksheet A states that "[c]hild support for basic shared parenting cases *shall* be calculated using [this] ... worksheet." W. Va.Code § 48–13–403 (2001) (Repl.Vol.2004) (emphasis added). Likewise, the statutory language pertaining to Worksheet B directs that "[c]hild support for extended shared parenting cases *shall* be calculated using [this] ... worksheet." W. Va. Code § 48–13–502 (2001) (Repl.Vol.2004) (emphasis added). Insofar as the word "shall" has a mandatory connotation, it is apparent that if the worksheets are used to apply the child support guidelines in a given case, the worksheet relating to the parenting arrangement involved therein is the one that is applicable. *See, e.g., State v. Allen,* 208 W.Va. 144, 153, 539 S.E.2d 87, 96 (1999) ("Generally, 'shall' commands a mandatory connotation and denotes that the described behavior is directory, rather than discretionary." (citations omitted)). Again, however, the statutes are silent as to the worksheet(s) to be used in a case such as this where multiple parenting arrangements are involved.

Furthermore, the practical effect of applying the child support guidelines is that a parent providing support for two children does not have a support obligation that is double that which a parent providing support for one child would be required to pay. Rather, it is apparent that the guidelines, themselves, have adopted incremental increases for the child support attributable to each additional child in a family. In other words, instead of calculating the child support obligation for one child and multiplying that figure by the number of children in that particular family, the guidelines contain predetermined amounts that correspond with the number of children in a family whose support is at issue. *See* W. Va.Code § 48–13–301 (2001) (Repl.Vol.2004). To illustrate further, referring to the "table of monthly basic child support obligations" set forth in W. Va.Code § 48–13–301 demonstrates that when the parents' combined adjusted gross monthly income is $550, the child support obligation for one child is $127, while the child support obligation for two children is $185.

Under the facts at issue in the instant proceeding, however, the resulting child support obligation calculated by the family court did not reflect this incremental increase. Because the family court applied the guidelines for each child's unique situation, it calculated each child's support as if there were no other children in that family. Thus, the family court determined the monthly child support obligation for K.S. under the basic shared parenting worksheet to be $3,033 and the monthly child support obligation for D.S. under the extended shared parenting worksheet to be $2,546, for a total monthly child support obligation of $5,579. By contrast, if both K.S. and D.S. had the same type of parenting arrangement and the child support obligation for both of them had been calculated under the basic shared parenting work-

---

9. "Basic shared parenting" is defined as "an arrangement under which one parent keeps a child or children overnight for less than thirty-five percent of the year and under which both parents contribute to the expenses of the child or children in addition to the payment of child support." W. Va.Code § 48–1–239(b) (2001) (Repl.Vol.2004).

10. "Extended shared parenting" is explained as "an arrangement under which each parent keeps a child or children overnight for more than thirty-five percent of the year and under which both parents contribute to the expenses of the child or children in addition to the payment of child support." W. Va.Code § 48–1–239(c).

sheet, the monthly child support obligation for both K.S. and D.S. would be $4,423. Similarly, if the child support obligation for both K.S. and D.S. had been calculated under the extended shared parenting worksheet, the monthly child support obligation for them both would be $3,713. Therefore, it is clear that the amount of the child support obligation determined by the family court is slightly inflated over the amounts derived from the worksheets which include the incremental increase for multiple children. The child support statutes, though, are silent as to how to balance the competing interests of applying the guidelines applicable to the multiple parenting arrangements at issue in this case while also giving effect to the incremental increase for additional children apparent from the statutory calculations, themselves.

Finally, while the Legislature has allowed for an adjustment to be made when calculating the amount of a child support obligation in cases involving "split physical custody" to more accurately reflect the amount of time each parent actually is caring for his/her child(ren), this case does not involve that type of arrangement. *See* W. Va.Code § 48–13–503 (2001) (Repl.Vol.2004) (providing instructions for calculating child support in cases involving "split physical custody"). "Split physical custody" involves "a situation where there is more than one child and where each parent has physical custody of at least one child." W. Va.Code § 48–1–241 (2001) (Repl.Vol.2004). Here, however, Mrs. Soulsby has physical custody of both of the parties' minor children, while Dr. Soulsby has only extended visitation with his son. Thus, neither do the "split physical custody" provisions apply to the facts of this case.

■ Having determined, then, that "the guidelines are inappropriate in [this] specific case," W. Va.Code § 48–13–702(a), insofar as they do not contemplate the present factual scenario in which a different parenting arrangement is in place for each child in this family, we conclude that the family court erred by strictly applying the child support guidelines to calculate Dr. Soulsby's child support obligation. In the absence of legislative guidance as to how to calculate child support in cases involving multiple parenting arrangements, the family court correctly determined that Dr. Soulsby's child support obligation for K.S. should be calculated using the basic shared parenting formula to arrive at a monthly child support obligation of $3,033. This calculation properly takes into consideration the fact that K.S. is almost exclusively cared for by Mrs. Soulsby and that she spends a minimal amount of time with Dr. Soulsby. Accordingly, we affirm the circuit court's ruling which denied Dr. Soulsby's appeal from the family court's order as it relates to his child support obligation for K.S.

■ With respect to the family court's calculation of Dr. Soulsby's child support obligation for D.S., however, we believe that a strict application of the extended shared parenting formula results in an inflated child support obligation when added to that amount previously calculated for K.S. and that the family court erred by not deviating from the guidelines. As the governing statutes specifically recognize, there may arise certain cases which require an "adjust[ment of] the guidelines-based award to accommodate the needs of the child or children or the circumstances of the parent or parents." W. Va.Code § 48–13–702(a). In this case, D.S. requires more parenting time with his father than does his sister K.S.; in order to accommodate D.S.'s needs, the family court awarded extended visitation with D.S. to Dr. Soulsby. As a result, D.S. spends approximately 136 days per year in his father's care, resulting in an extended shared parenting arrangement. *See* W. Va.Code § 48–13–501 (2001) (Repl.Vol.2004) (applying extended shared parenting formula "in cases where each parent has the child for more than one hundred twenty-seven days per year (thirty-five percent)"). *See also* W. Va.Code § 48–1–239(c) (2001) (Repl.Vol.2004) (defining "extended shared parenting"). However, simply applying the extended shared parenting guidelines to calculate D.S.'s child support results in an inflated figure because the incremental increase apparent in the statutory guidelines cannot be incorporated when each child's support obligation is calculated under a different worksheet.

In order to achieve a more equitable calculation, Dr. Soulsby should be afforded credit

for the time that D.S. is in his care. Therefore, Dr. Soulsby's child support obligation for D.S. should be calculated by first applying the extended shared parenting formula to arrive at a monthly child support obligation of $2,546; this is the amount obtained by the family court. Next, Dr. Soulsby should be given credit for the amount of time that he cares for D.S. To achieve this result, the number of days per year D.S. is with Dr. Soulsby should be divided by the total number of days in one year; thus, 136 [11] divided by 365 equals 0.37260. This percentage of care should then be multiplied by the monthly support obligation obtained above to calculate the amount by which the monthly obligation should be offset to account for Dr. Soulsby's care of D.S. Therefore, $2,546 multiplied by 0.37260 equals $949. Deducting the $949 offset from the $2,546 monthly support obligation yields an adjusted monthly support obligation of $1,597 for D.S.[12] Adding the two monthly support obligations together results in a total monthly support obligation of $4,630: $3,033 (for K.S.) plus $1,597 (for D.S.) equals $4,630. Accordingly, we reverse the circuit court's ruling denying Dr. Soulsby's appeal from the family court's order as it relates to his child support obligation for D.S. We further remand this case for the entry of a corrected child support order regarding D.S. consistent with this opinion.

▮▮▮▮ In closing, we appreciate the difficulty encountered by the family court in calculating child support in this case in which there were no clear legislative directives as to how to incorporate two different types of parenting arrangements into a single calculation of child support. The child support guidelines are a legislative construct that were created by and are subject to amendment by the Legislature. Simply stated, this Court does not sit as a superlegislature. *See Robinson v. Charleston Area Med. Ctr., Inc.,* 186 W.Va. 720, 726, 414 S.E.2d 877, 883

(1991) (commenting that "the judiciary may not sit as a superlegislature" (citation omitted)). "It is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten," *Subcarrier Communications, Inc. v. Nield,* 218 W.Va. 292, 299 n. 10, 624 S.E.2d 729, 736 n. 10 (2005) (internal quotations and citations omitted). If the Legislature has promulgated statutes to govern a specific situation yet is silent as to other related but unanticipated corresponding situations, it is for the Legislature to ultimately determine how its enactments should apply to the latter scenarios.

... When specific statutory language produces a result argued to be unforeseen by the Legislature, the remedy lies with the Legislature, whose action produced it, and not with the courts. The question of dealing with the situation in a more satisfactory or desirable manner is a matter of policy which calls for legislative, not judicial, action.

*Worley v. Beckley Mech., Inc.,* 220 W.Va. 633, 643, 648 S.E.2d 620, 630 (2007) (internal quotations and citations omitted). Therefore, we strongly urge the Legislature to provide instructions as to the proper method of applying the child support guidelines to calculate the child support obligation in cases, such as this, where each child has a different parenting plan and visitation schedule with the obligor parent in order to ensure the "uniformity" and "predictability" it wishes to secure through the implementation and application of the guidelines to child support calculations. W. Va.Code § 48–13–101.

## IV.

## CONCLUSION

For the foregoing reasons, that portion of the circuit court's January 12, 2007, order

---

11. In its August 8, 2006, order establishing Dr. Soulsby's child support obligation, the family court "calculate[d] that Dr. Soulsby has D[.S.] 136 overnights" per year.

12. While we recognize that this calculation accounts for the amount of time D.S. actually spends with Dr. Soulsby as does the application of the extended shared parenting formula set

forth in Worksheet B, W. Va.Code § 48–13–502 (2001) (Repl.Vol.2004), we find the calculation set forth in this opinion to be the most accurate and equitable method of affording Dr. Soulsby credit for the incremental increase contemplated by the Legislature when calculating the child support obligation for families with multiple children.

pertaining to Dr. Soulsby's child support obligation for K.S. is hereby affirmed. Moreover, that portion of the circuit court's order denying Dr. Soulsby's appeal from the family court's order setting the amount of his child support obligation for D.S. is hereby reversed. Finally, this case is remanded for the entry of a corrected child support order regarding D.S. in accordance with the directives set forth herein.

Affirmed, in part; Reversed, in part; and Remanded.