# CHARLESTON.

ROSE M. CAMERON *v.* EARL R. CAMERON

(No. 6174)

Submitted February 1, 1928.    Decided May 19, 1928.

1. DIVORCE—*Divorce Decree May be Entered Nunc Pro Tunc on Previous Rendition of Judgment Established by Entry or Memorandum on Court's Records or Quasi Records.*

    A decree may be entered *nunc pro tunc* upon a previous rendition of judgment established by some entry or memorandum upon the records or quasi records of the court. (p. 623.)

    (Divorce, 19 C. J. § 406.)

2. APPEAL AND ERROR—*Supreme Court of Appeals Will Not Review Questions Which Have Not Been Decided by Lower Court.*

    This Court will not review questions which have not been decided by the lower court.    (p. 628.)

    (Appeal and Error, 4 C. J. § 2536.)

    (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

MILLER, PRESIDENT, absent.

Appeal from Circuit Court, Kanawha County.

Suit by Rose M. Cameron against Earl R. Cameron for the cancellation of a decree annulling a marriage.    From a judgment of dismissal, plaintiff appeals.

*Reversed and remanded.*

*John L. Gillespie* and *Poffenbarger & Poffenbarger,* for appellants.

*Beverley Broun, Lon H. Kelly* and *R. S. Spilman,* for appellee.

LITZ, JUDGE:

The plaintiff appeals from the ruling of the circuit court of Kanawha county dismissing her bill for the cancellation of

an annulment decree pronounced and entered by the Common Pleas court of that county.

Rose Cameron (nee Kernap), and George Lumley were married December 24, 1900. March 19, 1909, she instituted suit against him for divorce in the circuit court of Boyd county, Kentucky. Having been advised and in good faith believing that the divorce had been granted, April 29, 1910, she married the defendant, Earl Cameron, in the State of Indiana, February 19, 1921. Lumley died August 6, 1922, before a decree of divorce had in fact been entered. Due to alleged cruelty on the part of Cameron she left his home in the City of Charleston, West Virginia, July 9, 1923. October 24, 1923, he instituted suit against her in the common pleas court of Kanawha county to annul the marriage between them on the ground that she was not divorced from Lumley at the time of its celebration. No appearance being made on her behalf, a decree was entered February 2, 1924, granting the relief prayed. The plaintiff and defendant continued to cohabit as man and wife pending the suit and after the decree until on or about July 10, 1925, when he entered into the marriage relation with one Ruth Grigg. During the whole of this period he furnished the plaintiff with ample support, issuing and delivering to her for that purpose, for only a portion of the time, bank checks as follow: check dated January 28, 1924, payable to Rose M. Cameron for $75.00; check dated February 11, 1924, payable to Rose M. Cameron for $50.00; check dated February 23, 1924, payable to Mrs. Earl Cameron for $100.00; check dated February 23, 1924, payable to Rose M. Cameron for $150.00; check dated April 12, 1924, payable to Mrs. Earl R. Cameron for $50.00; check dated June 28, 1924, payable to Mrs. Earl R. Cameron for $75.00; check dated July 24, 1924, payable to Mrs. Earl R. Cameron for $75.00; check dated August 30, 1924, payable to Mrs. Earl R. Cameron for $100.00; check dated August 25, 1924, payable to Mrs. Earl R. Cameron for $75.00; check dated September 27, 1924, payable to Mrs. Earl R. Cameron for $200.00; check dated October 7, 1924, payable to Mrs. Earl R. Cameron for $700.00; check dated December 7, 1924, payable to Mrs. Earl

R. Cameron for $200.00; check dated January 18, 1925, payable to Mrs. Earl R. Cameron for $50.00; check dated March 30, 1925, payable to Mrs. Earl R. Cameron for $100.00; check dated April 22, 1925, payable to Mrs. Earl R. Cameron for $100.00; check dated June 1, 1925, payable to Mrs. E. R. Cameron for $100.00; check dated July 3, 1925, payable to Mrs. Earl R. Cameron for $150.00.

November 20, 1925, the Kentucky court entered a decree *nunc pro tunc,* dissolving the marriage formerly existing between the plaintiff and George Lumley as of April 29, 1910.

This suit was instituted March 29, 1926, to cancel the decree of annulment on the ground that the plaintiff was induced by false representations of the defendant to forego the defenses open to her in the annulment proceeding. Denying the charge of fraud, the defendant asserts that the plaintiff is not entitled to relief because she could not have successfully defended the annulment proceeding, and for the further reason that the delay in instituting this suit constitutes laches on her part.

Considering these questions in the order stated, could the plaintiff have successfully defended the annulment proceeding? She contends, first, that a decree of divorce was rendered in her favor by the circuit court of Boyd county, Kentucky, against her former husband, George Lumley, April 29, 1910, which, by its entry *nunc pro tunc* at any time thereafter, would have legalized her marriage with defendant; second, that although no decree had been rendered in the divorce suit at the time of her second marriage, as the case was ready for hearing and had been submitted before that date, a decree could have been both rendered and entered at any time thereafter, dissolving the marriage between the plaintiff and George Lumley as of a date prior to her marriage with the defendant; and third, that her marriage with the defendant had been legalized by cohabitation after the death of Lumley.

There are two classes of cases in which orders *nunc pro tunc* have been justified. The first class embraces those cases in which the suitors have done all in their power to place the

cause in a condition to be decided by the court, but in which, owing to the delay of the court, no final judgment has been entered. The second class of cases embraces those in which judgments, though pronounced by the court, have, from accident or mistake of the officers of the court, never been entered on the records of the court. In Freeman on Judgments, sec. 135, it is stated: "Obviously there can be no judgment of divorce *rendered* after the death of either of the parties, since that event of itself terminates the status of marriage. Consequently where a party to a divorce suit dies before the rendition of a decree, none can be entered *nunc pro tunc.* This is true even where an interlocutory decree has been rendered before death, and though the statute provides for the entry of a final decree after the expiration of a prescribed period, since the final decree does not follow as a matter of course. And a statute such as the one mentioned in the preceding section, providing for entry of final judgment in the names of the original parties where either dies after an interlocutory judgment has been held inapplicable to divorce suits. But if a party to a divorce suit dies after submission of a writ or an appeal from the judgment, judgment on appeal may be entered *nunc pro tunc* as of the date of the submission, at least if some property interests are involved. And pursuant to the general principle that a court may enter *nunc pro tunc* a judgment previously rendered, if a judgment of divorce has been rendered which the clerk of the court has neglected to enter until after the death of one of the parties, he may be directed to enter it *nunc pro tunc* as of some day in the lifetime of the decedent, on application of one who was not a party to the cause, and when entered, it becomes operative as of the day of its rendition, and if collaterally drawn in question it is conclusive as to all matters of evidence necessary to its validity."

Whether it is improper to render a decree of divorce after the death of one of the parties, as indicated by Mr. Freeman, we think there is certainly no logical reason why an order actually pronounced during the life of the parties cannot be entered after the death of one of them. "Doubtless all courts

have the right and are under the duty to make their records speak the truth and the whole truth, whether the parties to the action or any other person wishes them to do so or not, and a court may therefore direct a *nunc pro tunc* entry on its own motion, as was done in *Wight's case*, 134 U. S. 136, 33 L. Ed. 865, 10 Sup. Ct. Rep. 847. Any person having rights dependent upon or affected by a judgment may call the attention of the court to the failure of its clerk to enter it, and ask that the entry be made as of the day when the judgment was rendered.'' Section 136, Freeman on Judgments.

The defendant in the divorce suit, summoned by order of publication, did not appear. After the taking and filing of proof on behalf of the plaintiff and the entry of an order of submission, October 28, 1909, a decree granting the plaintiff an absolute divorce was prepared and filed by her counsel, April 20, 1910. The following evidence is relied on by the plaintiff to prove the rendition of the judgment of divorce prior to the marriage of the plaintiff and defendant: The testimony of counsel, representing her in the suit, that the judgment was actually pronounced by the court; an itemized taxation of costs prepared and signed by the clerk; the filing of the papers in the case as an ended cause; an order of submission entered prior to the date of the decree; and the entry of the *nunc pro tunc* order based upon previous rendition of judgment.

The courts are not in accord as to the character and sufficiency of the evidence by which such previous action of the court may be proved. Some of them have held that in determining the question of fact, the court should resort to all sources of information that are competent under the general rules, including oral testimony of witnesses who have personal knowledge upon the subject, the amount of evidence required being a matter of discretion. The more general rule is that a *nunc pro tunc* order can only be made upon showing some entry or memorandum upon the records or *quasi* records of the court, and that parol evidence of the rendition of the judgment and its terms cannot be received, at least until such entry or memorandum is produced. This seems to be the

rule in West Virginia and Kentucky. The taxation of costs signed by the clerk is, in our opinion, sufficient *quasi* record evidence even under the stricter rule to establish the rendition of the judgment and to authorize the entry of an order *nunc pro tunc* carrying it into effect.    *Ex parte Jones,* 61 Ala. 399.

Counsel for the plaintiff say that by the death of George Lumley, August 6, 1922, and the continued cohabitation of the plaintiff and defendant as husband and wife thereafter until July 3, 1925, their marriage, solemnized while George Lumley was alive, if void before his death, was valid and binding at the institution of the annulment suit, October 24, 1923. Section 1, chapter 64 of the Code, provides that all marriages which are prohibited by law on account of either of the parties having a former wife or husband then living, shall if solemnized in this state, be void from the time they are so declared by a decree of divorce or nullity. Whether a marriage solemnized in this state, while one of the parties has a living consort, may be, without further ceremony, legalized by cohabitation after removal of the disability, the statute has no application to the marriage in this case, celebrated in Indiana where it is void without a decree of divorce or nullity.

"The general rule is that if parties desire marriage, and do what they can to render their union matrimonial, but one of them is under a disability, their cohabitation thus matrimonially meant and continued, after the disability is removed, will, in law, make them husband and wife from the moment that such disability no longer exists, although there are no special circumstances to indicate that the parties expressly renewed their consent or changed their mode of living after the removal of the impediment. And even though the removal is unknown, continued cohabitation thereafter evidences consent to live in wedlock. Thus where a man and a woman enter into a common law marriage in a jurisdiction wherein such marriages are not recognized, they will become lawfully married if they continue to cohabit as man and wife after removal to a jurisdiction wherein common law marriages are valid. * * * Of course in those jurisdictions wherein common law marriages are not valid no inference of marriage can arise from habit and repute after the removal of an impediment."

18 R. C. L. 436.   In 1924, the plaintiff and defendant cohabited as husband and wife in the State of Indiana where common law marriages are valid.

Before considering the evidence of fraud or laches charged, it is necessary to interpret the order complained of to determine whether or not these issues of fact were actually decided by the circuit court.   The order as originally drafted read: "This cause having been submitted for final hearing by order entered herein on the 16th day of May, 1927, the Court doth now, upon consideration of all of the papers read on former hearings, former orders and decrees entered herein, and especially all of those papers and orders mentioned and referred to in the said order of May 16, 1927, and this cause having been argued by counsel, upon consideration of all which the Court doth find, order and decree:

First:   That there never was a valid decree rendered by the Circuit Court of Boyd County, Kentucky, dissolving the bonds of matrimony heretofore solemnized between the plaintiff, whose maiden name was Rose Kernap, and George Lumley, and that the said plaintiff and the said George Lumley were husband and wife at the time of the celebration of the rites of matrimony between the plaintiff and the defendant Earl R. Cameron;

Second:   That there was no fraud perpetrated upon the plaintiff by the defendant Earl R. Cameron or any one else for him or upon his behalf, by which she the said plaintiff was deterred or prevented from interposing defense to the suit of Earl R. Cameron against Rose Cameron, lately pending and determined in the Court of Common Pleas for Kanawha County, West Virginia, in which said suit the supposed marriage of plaintiff and Earl R. Cameron was annulled; that the said decree of the Court of Common Pleas of Kanawha County, entered in the chancery cause last aforesaid, dated February 2, 1924, and recorded in chancery order book of said Court No. 5 at page 134, a copy of which has been filed herein was and is a valid decree and effective to annul the marriage heretofore solemnized between the parties thereto.

And it is, therefore, further adjudged, ordered and decreed that the plaintiff be denied the relief prayed for by her in

her original and amended bills and that the plaintiff's original and amended bills be and the same hereby are dismissed.

And it is further adjudged, ordered and decreed that the plaintiff do pay to the defendant his costs in this behalf expended, including a statutory attorney's fee of $15.00.

And it appearing to the Court that the said plaintiff has heretofore given before the Clerk of this Court a bond with Virginia Gillespie as her surety, securing the defendant and others in the payment of the costs of this suit, the right is reserved to the defendant herein hereafter to proceed upon said bond and against the obligors therein in any apt and proper mode to collect from them the costs aforesaid.''

The portion of the order adjudicating the issue of fraud was stricken out before its entry, so that the basis of the decision is that ''there never was a valid decree rendered by the Circuit Court of Boyd County, Kentucky, dissolving'' the marriage between the plaintiff and George Lumley. The circuit court having refused to pass upon the issue of fraud, the decree will be reversed and the cause remanded for further proceedings. This Court will not review questions which have not been decided by the lower court. *Kesler* v. *Lapham,* 45 W. Va. 293, 298.

*Reversed and remanded.*