724 S.E.2d 331

**Shawn ROMANO, Respondent Below, Petitioner**

**v.**

**Wendy GREVE, Petitioner Below, Respondent.**

**No. 11–0679.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 7, 2012.

Decided Feb. 23, 2012.

Mark W. Kelley, Keith B. Walker, Ray, Winton & Kelley, PLLC, Charleston, WV, for Petitioner.

Mark A. Swartz, Allyson H. Griffith, Swartz Law Offices, PLLC, Saint Albans, WV, for Respondent.

PER CURIAM:

The petitioner herein and respondent below, Shawn Romano ("Mr. Romano"), appeals from an order entered November 19, 2010, by the Circuit Court of Kanawha County. By that order, the circuit court ruled that (1) the record of the family court proceedings contained no factual basis to indicate that the parties had agreed to deviate from the child support guidelines in their calculation of child support; (2) the record also failed to evidence an agreement of the parties to calculate their incomes without the use of income averaging; and (3) the family court did not err in ruling that the 2009 child support modifications were retroactive to April 1, 2009.[1] On appeal to this Court, Mr. Romano challenges each of these rulings. Upon a

1. Although the circuit court's order identifies the possible effective dates as January 1, *2010*, and April 1, *2010*, it is apparent that such reference is a clerical error insofar as the family court ruling, which the circuit court's order upholds, established the possible effective dates applicable to Mr. Romano's request for modification of his *2009* child support obligation as January 1, *2009*, and April 1, *2009*. Accordingly, to maintain consistency with the circuit court's intention to affirm this portion of the family court's order, we will refer to the effective dates established by the circuit court's order as being the *2009* dates.

review of the parties' arguments, the record designated for appellate consideration, and the pertinent authorities, we affirm, in part, and reverse, in part, the lower court's order and remand this matter for further proceedings. We affirm that portion of the circuit court's order that upheld the April 1, 2009, commencement date for the 2009 child support modifications. We reverse the remainder of the circuit court's order that found that the parties had not indicated their intent to deviate from the child support guidelines or to specify the manner in which their support obligations would be calculated. Finally, we remand this case for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Romano and Wendy Greve, the respondent herein and petitioner below ("Ms. Greve"), were married, and two children were born of the marriage. In 2005, Mr. Romano and Ms. Greve were divorced. At the time of their divorce, the parties agreed to share custody of their minor children, with each parent receiving equal custodial time. Both Mr. Romano and Ms. Greve are attorneys, and each of their incomes fluctuates from year to year. In consideration of these fluctuations, the parties agreed to deviate from the child support guidelines [2] in calculating each party's child support obligation.

By order entered October 30, 2006, concerning the modification of child support,[3] the family court noted that "the parties announced to the Court [that] the parties had settled, compromised, and agreed upon all issues pertaining to the modification of child support in this matter." The family court observed further that

> [b]oth parties' incomes fluctuate. Accordingly, the Court finds that the parties' agreement as set forth below which determines the manner and method of establishing child support is fair and equitable and is in the best interests of the parties' minor children. In addition, the Court finds that, in entering into such agreement, the parties have made a knowing, intelligent and voluntary waiver of the strict application of the West Virginia Child Support formula.

Finally, the family court detailed precisely how child support would be calculated:

> On or before February 15, 2007[,] and on February 15 of each subsequent year, the parties shall exchange all pertinent financial information, including W–2s, K–1s, 1099s, quarterly documents, and any other financial documents which reflect income earned by the parties in 2006.
>
> After such exchange of data, Respondent's [Mr. Romano's] (or Petitioner's [Ms. Greve's], as the case may be) child support obligation for 2007, using the Guidelines for Child Support Awards promulgated as W. Va.Code § 48–13–101, shall be calculated based upon the parties' respective incomes for 2006. The formula shall include an appropriate adjustment for child care expenses and for health insurance; however, no other adjustments shall be included in the calculation. Once that number is determined, that number shall be the fixed amount of child support for the year 2007, and will not be subject to modification, retroactive or otherwise, for the year 2007.
>
> *Until further Order of the Court, the parties shall in subsequent years calculate child support in accordance with this method.* Each year the parties shall submit an Agreed Order noting any applicable modification. If there be any disagreement regarding the calculation, either party may schedule a hearing with the Court.

(Emphasis added).

After the entry of this order, Mr. Romano moved for an order to establish the parties'

2. For the child support guidelines, see generally W. Va.Code § 48–13–101 *et seq.* *See also* W. Va.Code § 48–13–702(a) (2001) (Repl. Vol. 2009) (permitting court to deviate from child support guidelines when warranted by facts of particular case).

3. The impetus for the modification of child support was Mr. Romano's change in employment from a law office to a law firm in which he hoped to achieve equity partner status and which would permit him to spend more time with his children. As a result of this job change, Mr. Romano experienced a reduction in his salary and moved for a modification of child support.

child support obligations for 2007 and 2008. By order entered December 23, 2008, the family court calculated the parties' support obligations for 2007, 2008, and 2009, until further modified by the court. The family court also adopted the parties' further agreement to establish the date by which a moving party must file a motion to modify child support, with supporting financial documentation, and the effective date of such a modification: "[B]y agreement of the parties, a motion to modify child support which is filed with the requisite financial disclosures, including without limitation, W-2's [sic], complete 1040's [sic] and K-1's [sic] before March 31, 2009, shall be retroactive in effect to January 1, 2009."

Thereafter, on March 26, 2009, Mr. Romano filed a motion for modification of child support regarding his 2009 support obligation, claiming that his 2008 support obligation had been based upon his prior year's income which had been artificially inflated by a substantial award received by his law firm which has not recurred. Also on March 26, 2009, Mr. Romano sent Ms. Greve a copy of his K-1 document for the 2008 tax year. Mr. Romano then sent Ms. Greve a copy of his completed tax return on April 15, 2009, stating that his delay in doing so was beyond his control and was occasioned by his investment account administrator and his accountant. By order entered January 28, 2010, the family court found as follows:

> The Court finds and concludes that W. Va.Code § 48-13-702 authorizes a court to disregard the child support guidelines if the court finds that the guidelines are inappropriate in a specific case, provided that the reason for the deviation is stated on the record or set forth in the Order.
>
> The Court finds and concludes that in 2006 the parties knowingly and voluntarily agreed to deviate from the application of the child support guidelines in order to accommodate their financial circumstances. Both parties, who are attorneys, and who were represented by attorneys, agreed upon a methodology to be used in calculating their respective child support obligations in that and subsequent years.
>
> The Court finds that the methodology agreed upon by the parties was approved by the Court, set forth in writing in the *2006 Order Regarding Modification of Child Support,* and that such Order states adequately the reasons for deviating from the strict application of the child support guidelines.
>
> The Court further finds that neither party should be permitted to unilaterally alter the agreed-upon methodology when doing so would benefit that party in any given year.[4]
>
> ....
>
> The Court further finds that Respondent [Mr. Romano] did not disclose his income tax return on or before March 31, 2009. Accordingly, based upon the language of the *Final Order* entered on December 23, 2008, this modification shall not be retroactive to January 1, 2009[,] but instead, pursuant to Rule 23 of the Rules of Practice and Procedure for Family Court, shall be effective April 1, 2009,[5] the month following service of the motion to modify.

(Emphasis in original; footnotes added). The family court then summarized its decision by reiterating that, "[a]bsent an agreement of the parties, or a change in circumstances of the facts upon which the prior agreement was reached, the 2006 *Order Regarding Modification of Child Support* provides the methodology for the parties to establish their respective child support obligations." (Emphasis in original). Finalizing its order, the family court concluded by determining the parties' respective child support obligations based upon Mr. Romano's actual salary from the preceding year rather than the amount propounded by Ms. Greve that was derived through income averaging.

4. This ruling is in reference to Ms. Greve's request to average parties' salaries over a three-year period, which request the family court specifically rejected.

5. Rule 23 of the West Virginia Rules of Practice and Procedure for Family Court provides that, "[e]xcept for good cause shown, orders granting relief in the form of spousal support or child support shall make such relief retroactive to the date of service of the motion for relief."

Both parties appealed to the circuit court, which entered an order on November 19, 2010, disposing of the matter. In so ruling, the

> Court conclude[d] that there is no factual basis in the record, including the several Orders entered by the family court, to support a finding or conclusion [that] the parties reached an agreement not to use the guidelines when calculating child support. More specifically, there is no factual basis in the record to support a finding or conclusion that the parties agreed not to utilize income averaging for self-employed persons....

Succinctly restating its final decision in the case, the circuit court emphasized that

> [t]here was no evidence in the record below to support the Family Court's finding that [the] parties agreed to deviate from the child support guidelines when calculating child support.
>
> There was no evidence in the record below to support the Family Court's finding that [the] parties agreed not to income average for self-employed persons....
>
> Respondent [Mr. Romano] in his cross petition [for appeal] has not demonstrated that the Family Court's determination that the recalculation of child support be retroactive to April 1, 20[09], rather than January 1, 20[09],[6] was either clearly erroneous or an abuse of discretion.

(Original footnote omitted; additional footnote added). Mr. Romano now appeals from these adverse rulings.

## II.

## STANDARD OF REVIEW

Before this Court, Mr. Romano challenges the circuit court's interpretation of and rulings regarding the family court's orders. We review such appeals generally in accordance with the following standard:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

Syl., *Carr v. Hancock,* 216 W.Va. 474, 607 S.E.2d 803 (2004). More specifically, "[q]uestions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977). We thus will consider the parties' arguments in accordance with these standards.

## III.

## DISCUSSION

Mr. Romano asserts on appeal that the circuit court erred by ruling that (1) the record contained no facts demonstrating an agreement of the parties to deviate from the child support guidelines and (2) the record evidence did not indicate an agreement of the parties to forego income averaging in calculating their incomes. Mr. Romano additionally contends that the circuit court erred by upholding the family court's decision to set April 1, 2009,[7] as the effective date for the subject child support modifications. We will consider each of these assigned errors in turn.

### *A. Agreement to Deviate from Child Support Guidelines*

The first ruling of the circuit court with which Mr. Romano disagrees is the circuit court's determination that "[t]here was no evidence in the record below to support the Family Court's finding that [the] parties agreed to deviate from the child support guidelines when calculating child support." (Footnote omitted). On appeal to this Court, Mr. Romano contends that the parties did, in fact, reach an agreement to deviate from the child support guidelines when initially calculating their respective incomes upon which their child support obligations would be

6. *See supra* note 1.

7. *See* note 1, *supra.*

based and that such agreement is memorialized in the family court's October 30, 2006, order. Upon our review of the record, we agree with Mr. Romano.

Awards of child support are established pursuant to guidelines that have been codified by statute. *See generally* W. Va. Code § 48-13-101 *et seq.* However, a court may depart from the strict application of the child support guidelines where the circumstances of a particular case or the resources of the parties so warrant.

> If the court finds that the guidelines are inappropriate in a specific case, the court may either disregard the guidelines or adjust the guidelines-based award to accommodate the needs of the child or children or the circumstances of the parent or parents. In either case, the reason for the deviation and the amount of the calculated guidelines award must be stated on the record (preferably in writing on the worksheet or in the order). Such findings clarify the basis of the order if appealed or modified in the future.

W. Va.Code § 48-13-702(a) (2001) (Repl. Vol. 2009). This Court previously has examined this statutory language and found it to be plain in its meaning and enforceable as it is written:

> Pursuant to the plain language of W. Va.Code § 48-13-702(a) (2001) (Repl. Vol. 2004), when a court calculating the amount of a child support obligation in a given case finds application of the guidelines to the facts of that case to be inappropriate, the court "may either disregard the guidelines or adjust the guidelines-based award to accommodate the needs of the child or children or the circumstances of the parent or parents." When a court disregards or deviates from the child support guidelines, "the reason for the deviation and the amount of the calculated guidelines award must be stated on the record (preferably in writing on the worksheet or in the order)." W. Va.Code § 48-13-702(a).

Syl. pt. 5, *Soulsby v. Soulsby,* 222 W.Va. 236, 664 S.E.2d 121 (2008).

In the case *sub judice,* the parties do not dispute that their children are entitled to receive an award of child support. Rather, they disagree as to whether they previously reached an agreement as to the method of its calculation, *i.e.,* whether their child support obligations are to be determined based upon an agreed-upon methodology that deviates from the statutory child support guidelines or whether their child support obligations are to be ascertained pursuant to a strict application of the statutory child support guidelines. Mr. Romano and Ms. Greve enjoy equal custodial time with and parental responsibility for their children. Although both parties are practicing attorneys, their incomes are not the same and, due to the nature of their practices and the manner of their compensation, their annual incomes fluctuate from year to year. After the family court entered its order finalizing their divorce, the parties negotiated the details pertaining to the custody of their minor children and their obligations to pay child support based upon said incomes. Such negotiations were, and continue to be, fraught with contention and acrimony. Despite their steadfast and unyielding positions, the parties eventually did agree upon the manner in which their incomes initially would be calculated in the hopes of facilitating the establishment of their support obligations in future years. In this regard, the parties agreed that, rather than using their current year's uncertain and incomplete financial information to establish their respective incomes upon which their support obligations would be based, they would rely instead upon their definitely ascertainable financial information from the prior year to define their respective incomes for the current year. The family court approved of and memorialized this agreement in its October 30, 2006, order in three separate and distinct references.

First, the family court observed that "the parties announced to the Court [that] the parties had *settled, compromised, and agreed upon* all issues pertaining to the modification of child support in this matter." (Emphasis added). The family court then explained the basis for and nature of the parties' agreement:

> [b]oth parties' incomes fluctuate. Accordingly, the Court finds that *the parties' agreement as set forth below which deter-*

*mines the manner and method of establishing child support* is fair and equitable and is in the best interests of the parties' minor children. In addition, the Court finds that, *in entering into such agreement, the parties have made a knowing, intelligent and voluntary waiver of the strict application of the West Virginia Child Support formula.*

(Emphasis added). Finally, the family court set forth the precise parameters of the parties' agreement and how their respective incomes and child support obligations would be calculated in accordance with their adopted methodology:

> On or before February 15, 2007[,] and on February 15 of each subsequent year, the parties shall exchange all pertinent financial information, including W–2s, K–1s, 1099s, quarterly documents, and any other financial documents which reflect income earned by the parties in 2006.[8]
>
> After such exchange of data, Respondent's [Mr. Romano's] (or Petitioner's [Ms. Greve's], as the case may be) child support obligation for 2007, using the Guidelines for Child Support Awards promulgated as W. Va.Code § 48–13–101, shall be calculated based upon the parties' respective incomes for 2006. The formula shall include an appropriate adjustment for child care expenses and for health insurance; however, no other adjustments shall be included in the calculation. Once that number is determined, that number shall be the fixed amount of child support for the year 2007, and will not be subject to modification, retroactive or otherwise, for the year 2007.
>
> *Until further Order of the Court, the parties shall in subsequent years calculate child support in accordance with this method.* Each year the parties shall submit an Agreed Order noting any applicable modification. If there be any disagreement regarding the calculation, either party may schedule a hearing with the Court.

(Footnote and emphasis added). The family court then reiterated its finding that the parties had agreed to deviate from the child support guidelines in its subsequent order entered January 28, 2010:

> *The Court finds and concludes that in 2006 the parties knowingly and voluntarily agreed to deviate from the application of the child support guidelines in order to accommodate their financial circumstances. Both parties,* who are attorneys, and who were represented by attorneys, *agreed upon a methodology to be used in calculating their respective child support obligations in that and subsequent years.*
>
> The Court finds that the methodology agreed upon by the parties was approved by the Court, set forth in writing in the *2006 Order Regarding Modification of Child Support,* and that such Order states adequately the reasons for deviating from the strict application of the child support guidelines.
>
> *The Court further finds that neither party should be permitted to unilaterally alter the agreed-upon methodology when doing so would benefit that party in any given year.*
>
> ....
>
> *Absent an agreement of the parties, or a change in circumstances of the facts upon which the prior agreement was reached, the 2006 Order Regarding Modification of Child Support provides the methodology*

8. The detailed listing of financial information each party is required to disclose to the other for income calculation purposes is consistent with this Court's recognition, under the prior version of the child support statutes, of the types of financial disclosures required in cases where the obligor parent's income is not a fixed amount. *See* Syl. pt. 1, *Ball v. Wills,* 190 W.Va. 517, 438 S.E.2d 860 (1993) ("In conjunction with any determination of child support pursuant to the child support guidelines set forth in West Virginia Code of State Regulations §§ 78–16–1 to –20 (1988), where a support obligor's income is not a fixed amount, but tends to fluctuate significantly from year to year, sole reliance on the support obligor's year-to-date income is insufficient for the purpose of determining child support, either initially or in the context of a modification. In cases involving fluctuating income, the court must require full financial disclosure and review financial information including, but not limited to, income tax returns and year-to-date income for a lengthy enough period of time so that significant past or anticipated changes in income are incorporated when calculating the support obligor's income.").

*for the parties to establish their respective child support obligations.*

(Emphasis added).

From these recitations in the family court's orders, it is apparent that, although the parties agreed to calculate their incomes in this manner and to adhere to this methodology in the future, they nevertheless acquiesced to the application of the statutory child support guidelines once their incomes had been initially calculated. Thus, while the parties agreed to a departure from the strict application of the guidelines, they did not renounce their use after their incomes had been calculated in accordance with their agreed-upon methodology. Importantly, the record demonstrates that both parties consented to this stated method of income establishment and support obligation calculation and that neither party objected thereto or appealed from the family court's October 30, 2006, order memorializing their agreement.

As noted in the foregoing analysis, W. Va.Code § 48–13–702(a) permits a deviation from the child support guidelines if their application would be "inappropriate in a specific case." Under this statute, a "court may either disregard the guidelines *or* adjust the guidelines-based award." W. Va.Code § 48–13–702(a) (emphasis added). *Accord* Syl. pt. 5, *Soulsby v. Soulsby,* 222 W.Va. 236, 664 S.E.2d 121. Here, the family court appreciated the unique facts and circumstances of this case regarding the manner in which the parties are compensated by their employers and the uncertainty in ascertaining the precise amount of their future earnings when it approved of the parties' agreement to deviate from a strict application of the child support guidelines in calculating their incomes. In keeping with the statutory requirements governing a departure from the child support guidelines, the family court then properly set forth "the reason for the deviation" and stated "the amount of the calculated guidelines award ... on the record ... in [its] order[.]" W. Va.Code § 48–13–702(a). *Accord* Syl. pt. 5, *Soulsby,* 222 W.Va. 236, 664 S.E.2d 121. Given the unique employment and compensation circumstances of the parties to this proceeding, the family court did not abuse its discretion when it approved of their income-calculation methodology. Thus, insofar as the parties' agreement to deviate from a strict application of the child support guidelines is, in fact, apparent from the record of the family court proceedings, the circuit court erred by concluding that the record lacked evidence of the parties' agreement. Accordingly, we reverse the circuit court's ruling in this regard.

### *B. Income Averaging*

Mr. Romano next contends that the circuit court erred by ruling that "[t]here was no evidence in the record below to support the Family Court's finding that [the] parties agreed not to income average for self-employed persons." Before this Court, Mr. Romano claims that the parties' agreed-upon method of calculating their incomes did not contemplate income averaging and that, in determining their respective child support obligations, the family court has never calculated their incomes using the income averaging approach. Upon our review of the record, we concur with Mr. Romano's characterization of the parties' agreement and the family court's consistent application of such methodology.

The amount of child support that is required to be paid in a given case is dependent upon the parents' incomes and is designed to provide the subject children with the same standard of living following the separation of their parents that they would have enjoyed had their parents continued to live together in one household. To achieve this goal, the Legislature has provided that

> children have a right to share in their natural parents' level of living.... In order to ensure that children properly share in their parents' resources, regardless of family structure, these [child support] guidelines are structured so as to provide that after a consideration of respective parental incomes, child support will be related, to the extent practicable, to the standard of living that children would enjoy if they were living in a household with both parents present.

W. Va.Code § 48–13–102 (2001) (Repl. Vol. 2009). The child support guidelines further

direct that "[a] child support order is determined by dividing the total child support obligation between the parents in proportion to their income. Both parents' *adjusted gross income* is used to determine the amount of child support." W. Va.Code § 48–13–201 (2001) (Repl. Vol. 2009) (emphasis added). In relevant part, " '[a]djusted gross income' means *gross income* less the payment of previously ordered child support, spousal support or separate maintenance." W. Va.Code § 48–1–202(a) (2001) (Repl. Vol. 2009) (emphasis added). The concept of income averaging that is at issue in this assignment of error is contained within the definition of "gross income."

As it pertains to the instant controversy, "gross income" is defined as follows:

> (a) "Gross income" means all earned and unearned income. The word "income" means gross income unless the word is otherwise qualified or unless a different meaning clearly appears from the context. When determining whether an income source should be included in the child support calculation, the court shall consider the income source if it would have been available to pay child-rearing expenses had the family remained intact[.]
>
> (b) "Gross income" includes, but is not limited to, the following:
>
> ....
>
> (7) Income from self-employment or the operation of a business, minus ordinary and necessary expenses which are not reimbursable, and which are lawfully deductible in computing taxable income under applicable income tax laws, and minus FICA and medicare contributions made in excess of the amount that would be paid on an equal amount of income if the parent was not self-employed: *Provided, That the amount of monthly income to be included in gross income shall be determined by averaging the income from such employment during the previous thirty-six-month period or during a period beginning with the month in which the parent first received such income, whichever period is shorter* [.]

W. Va.Code §§ 48–1–228(a) & (b)(7) (2001) (Repl. Vol. 2009) (emphasis added). Due to the nature of the parties' employment as attorneys, and specifically due to the compensation structure of Mr. Romano's law firm, Mr. Romano receives his annual salary through both wages and self-employment income. Thus, if the parties' incomes were calculated through strict adherence to the child support guidelines, the income averaging provisions set forth in W. Va.Code § 48–1–228(b)(7) would apply to any self-employment income they receive in a given year. However, because the parties agreed to deviate from the child support guidelines in their initial income calculations, they have eschewed the income averaging approach to income determination, a departure which the family court has consistently applied since its approval of the parties' agreement in 2006.

Upon each request the parties have made to the family court to establish or modify their child support obligations since the family court acknowledged their agreement in its October 30, 2006, order, the family court routinely has calculated the parties' incomes in accordance with the parties' agreed-upon methodology, which approach has not entailed the use of income averaging. In rendering its rulings, the family court consistently has acknowledged the parties' voluntary agreement to modify the manner in which their incomes are calculated for purposes of determining their respective child support obligations. For example, in the family court's October 30, 2006, order, the court declared that, "[u]ntil further Order of the Court, the parties shall in subsequent years calculate child support in accordance with this method." In its January 28, 2010, order, the family court reiterated the parties' agreement to deviate from a strict application of the child support guidelines and admonished that

> neither party should be permitted to unilaterally alter the agreed-upon methodology when doing so would benefit that party in any given year.
>
> ....
>
> Absent an agreement of the parties, or a change in circumstances of the facts upon which the prior agreement was reached, the 2006 *Order Regarding Modification of Child Support* provides the methodology

for the parties to establish their respective child support obligations.

(Emphasis in original).

■ The family court's repeated recitations of the parties' agreement make it quite apparent from the record of the underlying proceedings that the parties agreed to deviate from the child support guidelines in the manner in which their respective incomes are calculated. Their agreement did not anticipate the use of income averaging to calculate their incomes, and, accordingly, the family court has not employed income averaging in its calculations. Even during the proceedings in which the family court calculated the parties' respective incomes for 2007 and corresponding child support obligations for 2008 based upon Mr. Romano's 2007 receipt of "windfall" legal fees, the family court *did not* employ income averaging, and Ms. Greve *did not* request that the parties' incomes be averaged. Simply stated, Ms. Greve's continued acquiescence in the family court's use of the parties' agreed-upon methodology, and her recurrent failures to object thereto or to appeal therefrom, precludes her from now adopting, in the instant proceeding, a different position as to the meaning of the parties' agreement. *See* Syl. pt. 2, *West Virginia Dep't of Transp., Div. of Highways v. Robertson,* 217 W.Va. 497, 618 S.E.2d 506 (2005) ("Judicial estoppel bars a party from relitigating an issue when: (1) the party assumed a position on the issue that is clearly inconsistent with a position taken in a previous case, or with a position taken earlier in the same case; (2) the positions were taken in proceedings involving the same adverse party; (3) the party taking the inconsistent positions received some benefit from his/her original position; and (4) the original position misled the adverse party so that allowing the estopped party to change his/her position would injuriously affect the adverse party and the integrity of the judicial process.").

■ Moreover, the limited record designated for appellate consideration suggests that Ms. Greve first raised the issue of income averaging in response to Mr. Romano's most recent motion for modification of child support, at which time Ms. Greve claimed that the parties' agreement did not waive the application of the income averaging approach. To the extent that Ms. Greve now attempts to ascribe a different interpretation to the parties' agreement, *i.e.,* that they contemplated the use of income averaging, such a request for relief constitutes an independent basis for modification of the parties' child support obligations. As such, Ms. Greve must file her own, separate motion for modification and may not assert such grounds in response to Mr. Romano's motion, which requests the family court to calculate the parties' child support obligations in accordance with their prior agreement. *See Skidmore v. Skidmore,* 225 W.Va. 235, 246, 691 S.E.2d 830, 841 (2010) (per curiam) ("[A] party must make a motion for modification of an order awarding child support before a court is permitted to grant such relief." (citation omitted)).

In summary, the family court has, on numerous occasions, memorialized the agreement reached by the parties to deviate from a strict application of the child support guidelines in the initial calculation of their respective incomes and cautioned the parties as to the import of their agreement. Additionally, the family court has, consistently and unequivocally since 2006, employed this agreed-upon methodology to calculate the parties' incomes to which the child support guidelines have been applied. The parties have acquiesced in these representations of their agreement and in the amounts of their respective incomes derived from the application of such methodology. It bears repeating that neither of the parties has challenged the terms of their agreement or the employment of such income calculation methods. Therefore, contrary to the circuit court's conclusion, the record in this case sufficiently demonstrates an intention of the parties to depart from the income averaging approach in calculating their incomes insofar as their agreement adopted a methodology of income calculation different from that set forth in the child support guidelines. Accordingly, we reverse that portion of the circuit court's order ruling otherwise.

### *C. Retroactivity*

For his third assignment of error, Mr. Romano asserts that the circuit court erred

when it upheld "the Family Court's determination that the recalculation of child support be retroactive to April 1, 20[09], rather than January 1, 20[09].[9]" (Footnote added). In his appeal to this Court, Mr. Romano requests that he be relieved of the strict application of the child support modification retroactivity provision adopted by the parties, and approved by the family court, because, he claims, his late disclosure of the requisite financial documents was occasioned by circumstances beyond his control. Upon our review of the record in this case, we conclude that both the family court and the circuit court correctly ruled that the modification of Mr. Romano's child support obligation would be effective April 1, 2009, and that such modification would not be retroactive, because he tendered his supporting financial documentation beyond the time agreed upon by the parties.

As part of its December 23, 2008, order, the family court explicitly ruled that, "by agreement of the parties, a motion to modify child support which is filed with the requisite financial disclosures, including without limitation, W–2's [sic], complete 1040's [sic] and K–1's [sic] before March 31, 2009, shall be retroactive in effect to January 1, 2009." This language represents the entirety of the parties' agreement on this point, and no exception was included in its terms to relax the express deadlines or to provide for circumstances beyond a party's control. Following this order, Mr. Romano moved to modify his child support obligation: on March 26, 2009, Mr. Romano filed his motion for modification and sent Ms. Greve a copy of his 2008 K–1 statement. On April 15, 2009, Mr. Romano sent Ms. Greve a copy of his completed tax return. In support of his position that the modification of his child support obligation should be retroactive to January 1, 2009, Mr. Romano argued that he had filed his motion for modification prior to March 31, 2009; that he should be relieved from the disclosure deadlines because the delay in tendering his financial documents was beyond his control since his investment account administrator and his accountant had not made the requisite documents available to him before March 31, 2009; and that he had tendered all required documentation to Ms. Greve by April 15, 2009. The family court was not persuaded by Mr. Romano's reasoning and declined to accord retroactive effect to the modifications of Mr. Romano's child support obligation. In so ruling, by order entered January 28, 2010, the family court ruled that

> Respondent [Mr. Romano] did not disclose his income tax return on or before March 31, 2009. Accordingly, based upon the language of the *Final Order* entered on December 23, 2008, this modification shall not be retroactive to January 1, 2009[,] but instead, pursuant to Rule 23 of the Rules of Practice and Procedure for Family Court, shall be effective April 1, 2009, the month following service of the motion to modify.

(Emphasis in original). In its November 19, 2010, order, the circuit court affirmed this ruling.

As the discussion set forth in the preceding sections illustrates, Mr. Romano and Ms. Greve have, in an apparent attempt to facilitate the calculation of their respective child support obligations, entered into an numerous agreement defining the methodology to use to calculate their incomes and establishing precise parameters for the disclosure of supporting financial information. Throughout its orders, the family court repeatedly has reiterated the parties' agreement, to which recitations the parties have not objected. The parties' adoption of these deviations from the child support guidelines and their approval by the family court have established these particular procedures as the law of the case by which the parties' respective child support obligations are to be calculated. *See generally Noland v. Virginia Ins. Reciprocal,* 224 W.Va. 372, 378, 686 S.E.2d 23, 29 (2009) (treating lower court's ruling as law of the case where party did not appeal from such ruling (citations omitted)); *State ex rel. TermNet Merch. Servs., Inc. v. Jordan,* 217 W.Va. 696, 702 n. 14, 619 S.E.2d 209, 215 n. 14 (2005) ("The law of the case doctrine provides that a prior decision in a case is binding upon subsequent stages of

9. *See supra* note 1.

litigation between the parties in order to promote finality." (citation omitted)).

Moreover, to the extent that Mr. Romano previously has contributed to the promulgation of these standards and has acquiesced in their application, he cannot now advocate a different interpretation of the parties' agreement. *See* Syl. pt. 1, *Maples v. West Virginia Dep't of Commerce, Div. of Parks & Recreation,* 197 W.Va. 318, 475 S.E.2d 410 (1996) ("A litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal."). Just as we rejected Ms. Greve's attempt to incorporate the concept of income averaging into the parties' agreed-upon income calculation methodology, we similarly refuse to alter the parties' agreement by relaxing the temporal requirements establishing a prerequisite to the retroactivity of modifications.[10] *See* Syl. pt. 2, *Robertson,* 217 W.Va. 497, 618 S.E.2d 506 (delineating criteria for doctrine of judicial estoppel). Accordingly, we conclude that the circuit court correctly ruled that the modification of Mr. Romano's child support obligation should be effective April 1, 2009, and we affirm the court's ruling in this regard.

## IV.

## CONCLUSION

For the foregoing reasons, we affirm, in part, and reverse, in part, the November 19, 2010, order of the Circuit Court of Kanawha County and remand this matter for further proceedings.

Affirmed, in part; Reversed, in part; and Remanded.

Justice BENJAMIN and Justice McHUGH disqualified.

10. Although not raised as an issue by the parties in the instant proceeding, we are compelled to express our concern that the parties' agreement to extend retroactive effect to modifications of their child support obligations may conflict with our longstanding precedent. *See, e.g.,* Syl. pt. 2, *Hayhurst v. Shepard,* 219 W.Va. 327, 633 S.E.2d 272 (2006) ("The authority of a family court to modify a spousal support or child support award is prospective only and, absent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a family court is without authority to modify or cancel accrued alimony or child support installments."). *See also* W. Va. R. Prac. & Proc. for Fam. Ct. 23 (establishing retroactivity of child support order). Nevertheless, because this issue has not been raised by the parties and has not been addressed by the lower tribunals, the propriety of such an arrangement is not proper for consideration in the case *sub judice. See, e.g.,* Syl. pt. 2, *Duquesne Light Co. v. State Tax Dep't,* 174 W.Va. 506, 327 S.E.2d 683 (1984) (" 'This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance.' Syllabus Point 2, *Sands v. Security Trust Co.,* 143 W.Va. 522, 102 S.E.2d 733 (1958)."); Syl. pt. 2, *Cameron v. Cameron,* 105 W.Va. 621, 143 S.E. 349 (1928) ("This court will not review questions which have not been decided by the lower court.").