Davis, Justice:
In this appeal, this Court is asked to determine whether the biological child of a deceased parent whose parental rights were terminated prior to his death is a descendant of the parent for purposes of the descent and distribution provisions of the West Virginia Code, W. Va. Code § 42-1-1 et seq. , when the parent dies intestate. Based upon our review of the parties' arguments, the appendix record, and the pertinent authorities, and for the reasons explained below, we find that such a child does not meet the statutory definition of a descendant and, therefore, does not qualify to inherit under the statutory provisions pertaining to descent and distribution. Accordingly, we affirm the circuit court's decision in this case.
I.
FACTUAL AND PROCEDURAL HISTORY
The following facts are not disputed. Petitioner, Michaelin Brooke Hall ("Michaelin"), *841 is the only child born of a marriage between Kathy Hall French and Michael Eugene Hall ("Michael Hall"). At some point during the marriage, the Department of Health and Human Services filed an abuse and neglect petition against Michael Hall alleging that he abused Michaelin.[1] Thereafter, he voluntarily relinquished his parental rights with respect to Michaelin in April 2008. The circuit court acknowledged Michael Hall's voluntary relinquishment of his parental rights and entered an order legally terminating the same.[2] As a further result of the proceedings, Kathy Hall French and Michael Hall divorced in July 2008. Michael Hall never remarried and apparently fathered no other children. He died intestate on April 3, 2011.
On February 26, 2016, Kathy Hall French, as mother and next friend of Michaelin, filed the instant action in the Circuit Court of Mercer County claiming that Michaelin is the rightful heir to the estate of the decedent, Michael Hall. The defendants named in the complaint are Lona Sue Hall, Robert E. Hall, Loretta Hall (aka Loretta Jenkins), and Samantha Hazelwood (collectively "the Defendants").[3] Robert E. Hall, Loretta Hall, and Samantha Hazelwood each filed, pro se , a handwritten answer to the complaint. On January 5, 2017, Kathy Hall French filed a motion for summary judgment. Thereafter, on January 11, 2017, an amended complaint was filed removing Kathy French Hall as plaintiff and naming Michaelin, who had reached the age of majority, as plaintiff. The Defendants timely filed a joint response to the motion for summary judgment along with their own motion for summary judgment. The circuit court heard arguments on the motions and, by order entered on April 13, 2017, granted summary judgment to the Defendants. This appeal followed.
II.
STANDARD OF REVIEW
The case sub judice is before this Court on appeal from an order granting summary judgment. "A circuit court's entry of summary judgment is reviewed de novo ." Syl. pt. 1, Painter v. Peavy , 192 W. Va. 189, 451 S.E.2d 755 (1994). With respect to our review of a summary judgment order, we have explained that, "[i]n reviewing a circuit court's order granting summary judgment this Court, like all reviewing courts, engages in the same type of analysis as the circuit court." Fayette Cty. Nat'l Bank v. Lilly , 199 W. Va. 349, 353 n.8, 484 S.E.2d 232, 236 n.8 (1997), overruled on other grounds by Sostaric v. Marshall , 234 W. Va. 449, 766 S.E.2d 396 (2014). Thus, we are mindful that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York , 148 W. Va. 160, 133 S.E.2d 770 (1963). Because this case turns on the meaning of the relevant statutes, we finally note that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to de novo review." Syl. pt. 1, Appalachian Power Co. v. State Tax Dep't , 195 W. Va. 573, 466 S.E.2d 424 (1995). Guided by these standards, we proceed to our consideration of the issue raised.
III.
DISCUSSION
Michaelin assigns error to the circuit court's award of summary judgment to the *842 Defendants, which was based upon its conclusion that a child may not inherit from a parent who died intestate after his parental rights to said child were legally terminated. Michaelin encourages this Court to rely on the West Virginia Child Welfare Act, found at W. Va. Code § 49-1-101 et seq. , along with precedent of this Court that allows a parent's obligation to support a child to continue beyond the termination of parental rights, to reverse the circuit court's ruling on this novel issue.
Respondents Lona Sue Hall and Robert E. Hall ("the Halls")[4] contend that the circuit court's order was correct insofar as the West Virginia descent and distribution statutes do not permit the child of a parent whose parental rights have been terminated to share in the parent's intestate estate. The Halls recognize that continuing financial support following termination pursuant to the Child Welfare Act is a right belonging to the child and is in the child's best interest. They point out, however, that the laws of intestate succession are designed to meet a different goal, i.e. , to distribute real and personal property in accordance with what a decedent would have done in a will. See King v. Riffee , 172 W. Va. 586, 589, 309 S.E.2d 85, 87-88 (1983) ("Our laws concerning intestate succession are designed to effect the orderly distribution of property for decedents who lacked either the foresight or the diligence to make wills. The purpose of these statutes, then, is to provide a distribution of real and personal property that approximates what decedents would have done if they had made a will.").
Before engaging in our discussion of the relevant statutory provisions, we pause to observe that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, Smith v. State Workmen's Comp. Comm'r , 159 W. Va. 108, 219 S.E.2d 361 (1975). To this end, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." Appalachian Power Co. , 195 W. Va. at 587, 466 S.E.2d at 438. However, "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, Farley v. Buckalew , 186 W. Va. 693, 414 S.E.2d 454 (1992).
Although the parties to this appeal each rely on a distinct statutory scheme to support their respective arguments as to how this matter should be resolved, it is necessary for this Court to consider both relevant statutory schemes in settling this appeal. This is because
"[a] statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith." Syllabus Point 5, State v. Snyder , 64 W. Va. 659, 63 S.E. 385 (1908).
Syl. pt. 5, Community Antenna Serv., Inc. v. Charter Commc'ns VI, LLC , 227 W. Va. 595, 712 S.E.2d 504 (2011). Accordingly, we first will consider the Child Welfare Act. We then will examine the relevant statutory provisions related to descent and distribution. Finally, we will endeavor to reconcile the two in a manner that accords with the intent of the Legislature.
With respect to the termination of parental rights under the Child Welfare Act, this Court has recognized that
[a] final order terminating a person's parental rights, as the result of either an involuntary termination or a voluntary relinquishment *843 of parental rights, completely severs the parent-child relationship, and, as a consequence of such order of termination, the law no longer recognizes such person as a "parent" with regard to the child(ren) involved in the particular termination proceeding.
Syl. pt. 4, In re Cesar L ., 221 W. Va. 249, 654 S.E.2d 373 (2007). However, this Court has recognized that, while termination completely severs a parent's rights, certain of the child's rights persist. One such right that has been recognized by this Court is the right to continuing support. As Michaelin points out, this Court has ruled that a child's right to the financial support of his or her biological parents continues beyond the termination of parental rights:
Pursuant to the plain language of W. Va. Code § 49-6-5(a)(6) (1998) (Repl. Vol. 2001) [now W. Va. Code § 49-4-604(b)(6) (2015) (Repl. Vol. 2015)[5] ], a circuit court may enter a dispositional order in an abuse and neglect case that simultaneously terminates a parent's parental rights while also requiring said parent to continue paying child support for the child(ren) subject thereto.
Syl. pt. 7, In re Stephen Tyler R ., 213 W. Va. 725, 584 S.E.2d 581 (2003) (emphasis and footnote added).
At the time of the In re Stephen Tyler R . decision, W. Va. Code § 49-6-5(a)(6) provided, in relevant part, that a circuit court shall "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child, terminate the parental, custodial or guardianship rights and/or responsibilities of the abusing parent ...." (Emphasis added). Thereafter, in 2006, the Legislature amended W. Va. Code § 49-6-5(a)(6) by replacing "and/or" with simply "and." It is the 2006 version of the statute that was in effect at the time Michael Hall's parental rights were terminated. See W. Va. Code § 49-6-5(a)(6) (2006) (Repl. Vol. 2009).
This Court later addressed the amended version of W. Va. Code § 49-6-5(a)(6) and reaffirmed the Stephen Tyler R . holding when we held that
[t]he Legislature's 2006 amendment of W. Va. Code , § 49-6-5(a)(6), [now W. Va. Code § 49-4-604(b)(6) ] changing the statute's "guardianship rights and/or responsibilities" language to "guardianship rights and responsibilities" was not intended to relieve parents who have their parental rights terminated in an abuse and neglect proceeding from providing their child(ren) with child support.
Syl. pt. 1, In re Ryan B ., 224 W. Va. 461, 686 S.E.2d 601 (2009). The Ryan B . Court went on to conclude that
[a] circuit court terminating a parent's parental rights pursuant to W. Va. Code , § 49-6-5(a)(6) [now W. Va. Code § 49-4-604(b)(6) ], must ordinarily require that the terminated parent continue paying child support for the child, pursuant to the Guidelines for Child Support Awards found in W. Va. Code , § 48-13-101, et seq. [2001]. If the circuit court finds, in a rare instance, that it is not in the child's best interest to order the parent to pay child support pursuant to the Guidelines in a specific case, it may disregard the Guidelines to accommodate the needs of the child if the court makes that finding on the record and explains its reasons for deviating from the Guidelines pursuant to W. Va. Code , § 48-13-702, [2001].
Syl. pt. 2, In re Ryan B ., 224 W. Va. 461, 686 S.E.2d 601. In reaching these holdings, the Court in Ryan B. observed that
case law from this Court as well as courts around the country have held that an obligation of support is owed to a child by both of his parents until such time as the child is placed in the permanent legal custody of *844 another guardian/parent/obligor, such as in adoption. As this Court has frequently emphasized, the best interest of the child is the polar star by which all matters affecting children must be guided. See Syllabus Point 7, In re Brian D ., 194 W. Va. 623, 461 S.E.2d 129 (1995) ("Cases involving children must be decided not just in the context of competing sets of adults' rights, but also with a regard for the rights of the child(ren)."). This Court has previously stated that child support obligations are not only responsibilities parents owe to their children, they are also rights which belong to children . "Child support is a right which belongs to the child. " Kimble v. Kimble , 176 W. Va. 45, 49, 341 S.E.2d 420, 424 (1986), quoting Armour v. Allen , 377 So.2d 798, 799-800 (Fla. Dist. Ct. App. 1979). Allowing a parent who voluntarily relinquishes his/her parental rights to avoid this right that belongs to the child goes against the overall goal of the child welfare statutory scheme and is in opposition to our well established case law .
In re Ryan B ., 224 W. Va. at 467, 686 S.E.2d at 607 (footnotes omitted; bold emphasis added). Although Ryan B. involved a voluntary relinquishment, as does the instant matter, the Court made clear that "[t]he issue presently before us is applicable to both voluntary and involuntary relinquishments." Id . at 465 n.3, 686 S.E.2d at 605 n.3.
Insofar as this Court has made clear that the termination of parental rights does not extinguish certain rights belonging to the child, such as the right to child support, it would seem to follow, based upon the same rationale focusing on the best interests of the child, that it also would be in a child's best interest to inherit from a terminated parent who dies intestate. Indeed, numerous states have adopted legislation allowing a child to retain the right to inherit from a parent whose parental rights have been terminated.[6]
*845 Unfortunately, West Virginia is not among those states that have enacted specific legislation on this topic. Furthermore, because Michaelin seeks her share of her biological father's intestate estate in accordance with West Virginia statutory provisions pertaining to descent and distribution, we may not rely solely on the Child Welfare Act. Instead, it is necessary to examine the descent and distribution provisions of the West Virginia Code.
Pursuant to W. Va. Code § 42-1-3a (1992) (Repl. Vol. 2014),
[a]ny part of the intestate estate not passing to the decedent's surviving spouse under section three [§ 42-1-3] of this article, or the entire intestate estate if there is no surviving spouse, passes in the following order to the individuals designated below who survive the decedent:
(a) To the decedent's descendants by representation;
(Emphasis added).[7] Michael Hall had not remarried following his divorce from Michaelin's mother. Therefore, according to W. Va. Code § 42-1-3a, his entire estate passes to his surviving descendants . In other words, in order for Michael Hall's intestate estate to pass to Michaelin, she must be his descendant.
The term "descendant" is expressly defined in chapter forty-two of the code: " 'Descendant'
*846 of an individual means all of his or her descendants of all generations, with the relationship of parent and child at each generation being determined by the definition of child and parent contained in this code ." W. Va. Code § 42-1-1(5) (1995) (Repl. Vol. 2014) (emphasis added). According to the language used in this statute, the question of whether Michaelin is a descendant of Michael Hall is "determined by the definition of child and parent contained in this code." W. Va. Code § 42-1-1(5) (emphasis added).
Looking first to the term "child," we observe that it is not defined in chapter forty-two of the West Virginia Code. Oddly, though, W. Va. Code § 42-1-1(5) does not refer to the definition of "child" located in a particular chapter or article of the code. Rather, it refers to "the definition ... contained in this code ." W. Va. Code § 42-1-1(5) (emphasis added). Thus, the absence of a definition of "child" within the provisions relating to descent and distribution would seem to indicate that a definition found elsewhere in the code might be applied. Although the term "child" is defined in numerous places throughout the West Virginia Code, none of those definitions appear to be applicable in the context of descent and distribution insofar as they primarily refer to a child who has yet to reach the age of majority or who is subject to some other form of dependency. See, e.g. , W. Va. Code § 48-10-202 (2001) (Repl. Vol. 2015) (defining "child" in relation to grandparent visitation as "a person under the age of eighteen years who has not been married or otherwise emancipated"); W. Va. Code § 48-12-101(6) (2007) (Repl. Vol. 2015) (providing that " '[c]hild' means a child to whom a duty of child support is owed" in domestic relations statute for purposes of medical support enforcement); W. Va. Code § 48-16-102(1) (2015) (Repl. Vol. 2015) (defining "child" as "an individual, whether over or under the age of majority, who is or is alleged to be owed a duty of support by the individual's parent or who is or is alleged to be the beneficiary of a support order directed to the parent" in West Virginia Uniform Interstate Family Support Act); W. Va. Code § 48-20-102(b) (2001) (Repl. Vol. 2015) (specifying that " '[c]hild' means an individual who has not attained eighteen years of age" for purposes of Uniform Child Custody Jurisdiction and Enforcement Act); W. Va. Code § 48-31-102(3) (2017) (Supp. 2017) (defining "child" for purposes of Uniform Deployed Parents Custody and Visitation Act as "(A) An unemancipated individual who has not attained eighteen years of age; or (B) An adult son or daughter by birth or adoption, or under law of this state other than this article, who is the subject of a court order concerning custodial responsibility"); W. Va. Code § 49-1-209 (2015) (Repl. Vol. 2015) (stating, in child welfare statute relating to missing children, that " '[c]hild' means an individual under the age of eighteen years who is not emancipated"); W. Va. Code § 49-7-101 (2015) (Repl. Vol. 2015) (stating, in article II, subsection (a) of Interstate Compact on Placement of Children, that " '[c]hild' means a person who, by reason of minority is legally subject to parental, guardianship or similar control"); W. Va. Code § 49-8-2(1) (2016) (Supp. 2017) (establishing definition of "child" for purposes of Supporting and Strengthening Families Act and stating that " '[c]hild' means an individual under eighteen years of age"); W. Va. Code § 61-8D-1(2) (2014) (Repl. Vol. 2014) (setting out that " '[c]hild' means any person under eighteen years of age not otherwise emancipated by law" for purposes of article pertaining to criminal child abuse).
While the absence of a clear definition of the term "child" is troublesome, W. Va. Code § 42-1-1(5) specifies that, for the purpose of identifying descendants, "the relationship of parent and child" is "determined by the definition of child and parent contained in this code." (Emphasis added). Use of the conjunctive "and" in this provision directs that consideration be given to the definition of both "child" and "parent" in determining the relationship of parent and child. See Ooten v. Faerber , 181 W. Va. 592, 597, 383 S.E.2d 774, 779 (1989) (observing that "the use of 'and' ... clearly makes both conditions necessary, not merely either of the two. ... 'And' is a *847 conjunction connecting words or phrases, expressing the idea that the latter is to be added to or taken along with the first."). Because both definitions must be met, we next consider the term "parent." If a parent whose parental rights have been terminated does not come within the definition of "parent" as set out in the descent and distribution statutes, then this issue may be resolved even in the absence of a clear definition of the term child.
The term "parent," as defined within the descent and distribution statutes, "includes any person entitled to take, or who would be entitled to take if the child died without a will, as a parent under this code by intestate succession from the child whose relationship is in question and excludes any person who is only a stepparent, foster parent or grandparent." W. Va. Code § 42-1-1(26) (emphasis added). Under the plain language of this provision, then, a "parent" for purposes of intestate succession is one who would be entitled to take if the child died without a will. A parent whose rights have been terminated does not meet this definition. Termination of parental rights terminates all rights of the parent. See Syl. pt. 4, in part, In re Cesar L ., 221 W. Va. 249, 654 S.E.2d 373 ("A final order terminating a person's parental rights ... completely severs the parent-child relationship, and, as a consequence of such order of termination, the law no longer recognizes such person as a 'parent' with regard to the child(ren) involved in the particular termination proceeding."). See also W. Va. Code § 49-4-604(6) (formerly W. Va. Code § 49-6-5(a)(6) ) (authorizing circuit court to terminate "parental, custodial and guardianship rights and responsibilities" of an abusing parent upon making required findings); Elmer Jimmy S. v. Kenneth B ., 199 W. Va. 263, 268, 483 S.E.2d 846, 851 (1997) ("When an individual's parental rights have been terminated the law no longer recognizes such individual as a 'parent' with regard to the child or children involved in the particular termination proceeding."). Because, the relationship of a terminated parent with his or her child is utterly severed by virtue of W. Va. Code § 49-4-604(b)(6), a parent whose parental rights have been terminated would not be entitled to take from the subject child and, therefore, does not meet the definition of "parent" set out in W. Va. Code § 42-1-1(26).[8] As one court has aptly observed, "[e]quity, morality, and common sense dictate that physically or sexually abusive parents have no right of inheritance by intestacy." New Jersey Div. of Youth & Family Servs. v. M.W. , 398 N.J. Super. 266, 295, 942 A.2d 1, 18 (App. Div. 2007).
Insofar as the identity of "descendants" who may take an intestate share of an estate is dependant upon the existence of a relationship that includes both a "parent" and a "child," and a terminated parent fails to meet the definition of "parent" with respect to the subject child, the child is not a "descendant" of that biological parent. See W. Va. Code § 42-1-1(5) (" 'Descendant' of an individual means all of his or her descendants of all generations, with the relationship of parent and child at each generation being determined by the definition of child and parent contained in this code ." (emphasis added) ). Accordingly, we now expressly hold that a child may not inherit under *848 W. Va. Code § 42-1-3a(a) from a biological parent who dies intestate after his or her parental rights to said child have been either voluntarily relinquished or involuntarily terminated.
Applying the foregoing holding to the instant matter, we must affirm the circuit court's correct determination that Michaelin may not inherit from her father's intestate estate. While we are sympathetic to Michaelin's circumstances, the decisions of this Court must be guided by the law and not our sympathies. We firmly believe our holding is the best representation of Legislative intent based upon the relevant statutes. Any change in this law must be enacted by the Legislature, as that is the proper body to address policy considerations and resolve the myriad of questions associated with such a change in the law.[9] See, e.g. , Richard L. Brown, Disinheriting the "Legal Orphan": Inheritance Rights of Children After Termination of Parental Rights , 70 Mo. L. Rev. 125, 138-39 (Winter 2005) (observing that broadly worded statutes likely "have the effect of extinguishing the right of the child to inherit from a terminated parent" and "[t]he only remedy in such states may be amendment of the statute to provide explicitly ... that the child's inheritance rights survive termination." (footnote omitted) ). Such considerations simply are not proper undertakings for courts. "It is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled or rewritten ...." State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars , 144 W. Va. 137, 145, 107 S.E.2d 353, 358 (1959). See also Syl. pt. 3, in part, West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp ., 196 W. Va. 326, 472 S.E.2d 411 (1996) ("If the language of an enactment is clear and within the constitutional authority of the law-making body which passed it, courts must read the relevant law according to its unvarnished meaning, without any judicial embroidery."). In other words,
[t]his Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation. It is the duty of the Legislature to consider facts, establish policy, and embody that policy in legislation. It is the duty of this Court to enforce legislation unless it runs afoul of the State or Federal Constitutions .
Syl. pt. 2, Huffman v. Goals Coal Co. , 223 W. Va. 724, 679 S.E.2d 323 (2009).
IV.
CONCLUSION
For the reasons explained herein, we affirm the April 13, 2017, order of the Circuit Court of Mercer County granting summary judgment to the defendants.
Affirmed.
CHIEF JUSTICE WORKMAN and JUSTICE KETCHUM dissent and reserve the right to file dissenting opinions.
Without question, Michaelin Brooke Hall is entitled to inherit the estate of her biological father, the decedent, Michael Eugene Hall. As explained below, Michaelin's right to inherit flows from her relationship as his biological child in accordance with our intestacy statutes. Even though his parental rights were legally terminated, her rights as his child and descendant remain intact. By creating new law extinguishing that valuable right, the majority fails to apply the plain language of the statute and ignores compelling precedent. Because this disturbing decision *849 piles even more hardship on this child whose life was already severely damaged by parental abuse and neglect, I vehemently dissent.
Our analysis begins with the general premise that "[a]ny part of a decedent's estate not effectively disposed of by will passes by intestate succession to the decedent's heirs as prescribed in this code[.]" W.Va. Code § 42-1-2(a) (2014). We then turn to the pertinent statute, West Virginia Code § 42-1-3a (2014), which provides, in relevant part:
Any part of the intestate estate not passing to the decedent's surviving spouse under section three [§ 42-1-3] of this article, or the entire intestate estate if there is no surviving spouse, passes in the following order to the individuals designated below who survive the decedent:
(a) To the decedent's descendants by representation;
(b) If there is no surviving descendant, to the decedent's parents equally if both survive, or to the surviving parent[.]
Under the plain language of this statute, Michaelin-the decedent's only child and surviving descendant-inherits his entire estate because he left no surviving spouse. Case closed.
The majority's convoluted path to the contrary conclusion fails to respect the most basic of all canons of statutory interpretation: statutes mean what they plainly say.[1] In its tortured analysis, the majority reasons that the impediments to Michaelin's inheritance are the statutory definitions of "descendant," West Virginia Code § 42-1-1(5) (2014), and "parent," Id . § 42-1-1(26). Essentially, the majority reasons that after his parental rights were terminated, Mr. Hall would not meet the definition of "parent" for purposes of the descent and distribution statutes. The majority then abruptly leaps to the unsupported conclusion that their parent-child relationship was "utterly severed" to such a degree that Michaelin no longer remained Mr. Hall's "descendant."
The majority is half right: the decedent, Mr. Hall, would not meet the definition of "parent" for purposes of the descent and distribution statutes. All this means, however, is that he would not be entitled to inherit from Michaelin if she predeceased him. However, that hypothetical question is not before us. Although our statutes do not specifically address that issue, I agree with the majority that Mr. Hall lost those rights after he voluntarily relinquished all his parental rights as a result of his abuse of this child.[2]
Nevertheless, it makes little sense to construe West Virginia Code § 42-1-3a as creating a per se statutory barrier to the reverse-Michaelin's ability to inherit from Mr. Hall. The central flaw in the majority's reasoning is that it assumes the rights flowing from the parent-child relationship are reciprocal here when under the instant circumstances, they are not.
Significantly, the majority fails to acknowledge that the pertinent statutes which control the distribution of the decedent's estate were modeled upon the 1990 Revised Uniform Probate Code ("RUPC").[3] In fact, West *850 Virginia was the first state to enact the intestacy provisions of the RUPC. Mongold v. Mayle , 192 W.Va. 353, 355, 452 S.E.2d 444, 446 (1994). West Virginia Code § 42-1-3a tracks the same language as the RUPC, as well as the Uniform Probate Code ("UPC"), 8 U.L.A. 91 (2010), when dealing with intestate distribution of an estate which does not pass to a surviving spouse.[4] Therefore, references to the RUPC/UPC are important in order to facilitate an understanding of the statutes at issue in the case before us. See John W. Fisher, II, Scott A. Curnutte, Reforming the Law of Intestate Succession and Elective Shares: New Solutions to Age-Old Problems , 93 W. Va. L. Rev. 61 (1990) (providing extensive discussion and comparison of provisions of RUPC and statutory law of West Virginia).
In comparison to the provision of West Virginia law dealing with intestacy inheritance, the UPC has the same definition of "descendant" and "parent." " 'Descendant' of an individual means all of his [or her] descendants of all generations, with the relationship of parent and child at each generation being determined by the definition of child and parent contained in this [code]." UPC § 1-201(9) and W.Va. Code § 42-1-1(5). " 'Parent' includes any person entitled to take, or who would be entitled to take if the child died without a will, as a parent under this [code] by intestate succession from the child whose relationship is in question and excludes any person who is only a stepparent, foster parent, or grandparent." UPC § 1-201(32) and W.Va. Code § 42-1-1(26).
In contrast, however, West Virginia Code Chapter 42 contains no definition of "child" when the UPC does define the term. The UPC provides that: " 'Child' includes an individual entitled to take as a child under this [code] by intestate succession from the parent whose relationship is involved and excludes a person who is only a stepchild, a foster child, a grandchild, or any more remote descendant." Id . § 1-201(5). It is not disputed that Michaelin is Mr. Hall's biological daughter. Therefore, she plainly meets this definition of child.
Notably, the UPC does not extinguish the right of the child to inherit from his or her biological parent following a parental termination proceeding, but it does extinguish the parent's right to inherit from his or her child in this context.[5] Thus, the UPC teaches that there is unilateral extinguishment of intestacy rights in these matters under the same definition of "descendant." Yet, the majority wholly ignores the UPC's express endorsement of the more sensible result here. Also, among states that have statutes explicitly addressing the effect of the parental termination order on the child's inheritance rights, there is often no reciprocity of rights; some expressly bar the parent's right to inherit after termination, but also expressly retain the child's right to inherit (until the child is adopted). Richard L. Brown, *851 Disinheriting the "Legal Orphan": Inheritance Rights of Children After Termination of Parental Rights , 70 Mo. L. Rev. 125, 131 (Winter 2005).
Consistent with the UPC, West Virginia statutes dealing with descent and distribution contain no language purporting to divest a child's right of inheritance under these facts. See W.Va. Code Chapter 42. Therefore, the termination of Mr. Hall's parental rights in no way negates the fact that Michaelin is his child, descendant, and sole beneficiary under West Virginia Code § 42-1-3a. One would have thought it too obvious to mention that this Court is duty bound to apply the statute, not amend it.
The disinheritance of children of terminated parents is not only inconsistent with the plain language of the statute, it runs counter to the broader scheme of intestate succession. "In the American legal system, inheritance rights are almost invariably based on the parent-child relationship-children inherit from their biological mothers and fathers." Brown, Disinheriting the "Legal Orphan": Inheritance Rights of Children After Termination of Parental Rights , 70 Mo. L. Rev. at 126. There are exceptions to this rule; for instance, adopted children inherit from their adoptive parents, not their biological parents. Id .[6] However, there is simply no "rationale for extinguishing the right of children to inherit from their terminated biological parents [in this context]." Id . at 127.
Moreover, the majority's central premise-that Michaelin lost her statutory rights to inherit from her biological father through intestate succession when his parental rights were terminated because of his child abuse-does not square with our case law and the sound public policies that underlie our child welfare system. The primary goal of a child abuse and neglect proceeding is to further the welfare of the child.[7] And this Court has made it abundantly clear that parental termination proceedings do not extinguish certain rights enjoyed by a child, e.g., the loss of statutory rights is not reciprocal in this context. In In re: Ryan B. , 224 W.Va. 461, 686 S.E.2d 601 (2009), we held that a parent whose parental rights have been terminated must typically continue paying child support, so long as such payments are in the child's best interest.[8] See also Syl. Pt. 7, In re: StephenTyler R. , 213 W.Va. 725, 584 S.E.2d 581 (2003) ("Pursuant to the plain language of W.Va. Code § 49-6-5(a)(6) (1998) (Repl.Vol. 2001), a circuit court may enter a dispositional order in an abuse and neglect case that simultaneously terminates a parent's parental rights while also requiring said parent to continue paying child support for the child(ren) subject thereto.").
Under this precedent, Michaelin's rights under our intestacy statutes remain intact following the parental termination proceeding until extinguished for some other reason, such as adoption. There is simply no plausible basis for inferring that the Legislature intended to disinherit the child in this equation. The gaping hole in the majority opinion is its failure to answer the crucial question *852 upon which all else depends: Where is the statutory support for this exception to the clear statutory command? That question is unanswered because there is none. Consequently, the majority's adoption of such exception here amounts to a blatant judicial override of the statute. However, this Court is not at liberty to read into a statute that which simply is not there.
"It is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten," Subcarrier Communications, Inc. v. Nield , 218 W.Va. 292, 299 n.10, 624 S.E.2d 729, 736 n.10 (2005) (internal quotations and citations omitted). If the Legislature has promulgated statutes to govern a specific situation yet is silent as to other related but unanticipated corresponding situations, it is for the Legislature to ultimately determine how its enactments should apply to the latter scenarios.
Soulsby v. Soulsby , 222 W.Va. 236, 247, 664 S.E.2d 121, 132 (2008).[9]
The majority decision, no matter how much it says otherwise, ultimately crafts a judge-made exception to the general rule regarding intestate succession plainly set forth in West Virginia Code § 42-1-3a. But not one of the cases on which the majority relies supports the extraordinary premise that courts can create out of whole cloth such an exclusion.
Accordingly, this Court should have applied the clear language of West Virginia Code § 42-1-3a and the foundational principles of In re: Ryan B . to recognize Michaelin's statutory right to inherit from Mr. Hall through intestate succession continued after his parental termination proceeding. The majority's decision is wrong, wrong, wrong, both from a legal and human perspective.
Because there is nothing legally right or just about this decision, I respectfully dissent. I am authorized to state that Justice Ketchum joins this dissent.

Michael Hall also was criminally charged for his abuse of Michaelin and sentenced to a lengthy term of incarceration. The appendix record submitted in connection with this appeal does not contain any documents from the abuse and neglect or criminal proceedings. However, the circuit court's order observes that "[t]he records of the companion juvenile abuse and criminal cases referenced herein are replete with evidence of the abuse [Michaelin] suffered while in the care of [Michael Hall]."

The circuit court order was not included in the appendix record submitted on appeal.

It appears that defendants Lona Sue Hall and Robert E. Hall are the parents of the decedent Michael Hall, Loretta Hall (aka Loretta Jenkins) is the decedent's sister, and Samantha Hazelwood is the decedent's niece. Lona Sue Hall was appointed administratrix of Michael Hall's estate.

Defendants Loretta Hall (aka Loretta Jenkins) and Samantha Hazelwood did not file a response to this appeal.

In 2015, the Legislature re-codified the Child Welfare Act. The provision cited in Syllabus point 7 of In re Stephen Tyler R ., 213 W. Va. 725, 584 S.E.2d 581 (2003), is now found at W. Va. Code § 49-4-604(b)(6) (2015) (Repl. Vol. 2015).

See, e.g. , Ariz. Rev. Stat. Ann. § 8-539 (1970) ("An order terminating the parent-child relationship shall divest the parent and the child of all legal rights, privileges, duties and obligations with respect to each other except the right of the child to inherit and support from the parent . This right of inheritance and support shall only be terminated by a final order of adoption." (emphasis added) ); Ark. Code Ann. § 9-27-341(c)(1) (2017) ("An order terminating the relationship between parent and juvenile divests the parent and the juvenile of all legal rights, powers, and obligations with respect to each other, including the right to withhold consent to adoption, except the right of the juvenile to inherit from the parent, that is terminated only by a final order of adoption. " (emphasis added) ); D.C. Code Ann. § 16-2361(a) (1998) ("An order terminating the parent and child relationship divests the parent and the child of all legal rights, powers, privileges, immunities, duties and obligations with respect to each other, except the right of the child to inherit from his or her parent . The right of inheritance of the child shall be terminated only by a final order of adoption." (emphasis added) ); Kan. Stat. Ann. § 38-2269(g)(1) (2008) ("A termination of parental rights under the code shall not terminate the right of a child to inherit from or through a parent . Upon such termination all rights of the parent to such child, including, such parent's right to inherit from or through such child, shall cease." (emphasis added) ); Ky. Rev. Stat. Ann. § 625.044 (1988) ("Following the entry of an order voluntarily terminating parental rights in a child, the child shall retain the right to inherit from his parent under the laws of descent and distribution until the child is adopted ." (emphasis added) ); Ky. Rev. Stat. Ann. § 625.104 (1988) ("Following the entry of an order involuntarily terminating parental rights in a child, the child shall retain the right to inherit from his parent under the laws of descent and distribution until the child is adopted ." (emphasis added) ); La. Child. Code Ann. art. 1038 (1997) ("A final judgment terminating parental rights relieves the child and the parent against whom the judgment is rendered of all of their legal duties and divests them of all of their legal rights with regard to one another except as provided in Article 1037.1, and except: (1) The right of the child to inherit from his biological parents and other relatives ." (emphasis added) ); Mont. Code Ann. § 41-3-611(1) (2003) ("An order for the termination of the parent-child legal relationship divests the child and the parents of all legal rights, powers, immunities, duties, and obligations with respect to each other as provided in Title 40, chapter 6, part 2, and Title 41, chapter 3, part 2, except the right of the child to inherit from the parent ." (emphasis added) ); Nev. Rev. Stat. Ann. § 128.110(1) (2011) ("The termination of parental rights pursuant to this section does not terminate the right of the child to inherit from his or her parent or parents, except that the right to inherit terminates if the child is adopted as provided in NRS 127.160." (emphasis added) ); N.C. Gen. Stat. Ann. § 7B-1112 (2012) ("An order terminating the parental rights completely and permanently terminates all rights and obligations of the parent to the juvenile and of the juvenile to the parent arising from the parental relationship, except that the juvenile's right of inheritance from the juvenile's parent shall not terminate until a final order of adoption is issued ." (emphasis added) ); Okla. Stat. Ann. tit. 10A, § 1-4-906(A) (2009) ("The termination of parental rights terminates the parent-child relationship, including: 1. The parent's right to the custody of the child; 2. The parent's right to visit the child; 3. The parent's right to control the child's training and education; 4. The necessity for the parent to consent to the adoption of the child; 5. The parent's right to the earnings of the child; and 6. The parent's right to inherit from or through the child. Provided, that nothing herein shall in any way affect the right of the child to inherit from the parent ." (emphasis added) ); S.C. Code Ann. § 63-7-2590(A) (2008) ("An order terminating the relationship between parent and child under this article divests the parent and the child of all legal rights, powers, privileges, immunities, duties, and obligations with respect to each other, except the right of the child to inherit from the parent. A right of inheritance is terminated only by a final order of adoption ." (emphasis added) ); Tenn. Code Ann. § 36-1-11(l)(2) (2018) ("Notwithstanding subdivision (l)(1), a child who is the subject of the order for termination shall be entitled to inherit from a parent whose rights are terminated until the final order of adoption is entered ." (emphasis added) ); Tex. Fam. Code Ann. § 161.206(b) (2017) ("Except as provided by Section 161.2061, an order terminating the parent-child relationship divests the parent and the child of all legal rights and duties with respect to each other, except that the child retains the right to inherit from and through the parent unless the court otherwise provides ." (emphasis added) ); Utah Code Ann. § 78A-6-513(1) (2013) ("An order for the termination of the parent-child legal relationship divests the child and the parents of all legal rights, powers, immunities, duties, and obligations with respect to each other, except the right of the child to inherit from the parent ." (emphasis added) ); Va. Code Ann. § 64.2-102(5) (2012) ("Unless otherwise specifically provided therein, an order terminating residual parental rights under § 16.1-283 terminates the rights of the parent to take from or through the child in question but the order does not otherwise affect the rights of the child, the child's kindred, or the parent's kindred to take from or through the parent or the rights of the parent's kindred to take from or through the child." (emphasis added) ).

W. Va. Code § 42-1-3a (1992) (Repl. Vol. 2014) states in full:
Any part of the intestate estate not passing to the decedent's surviving spouse under section three of this article, or the entire intestate estate if there is no surviving spouse, passes in the following order to the individuals designated below who survive the decedent:
(a) To the decedent's descendants by representation;
(b) If there is no surviving descendant, to the decedent's parents equally if both survive, or to the surviving parent;
(c) If there is no surviving descendant or parent, to the descendants of the decedent's parents or either of them by representation;
(d) If there is no surviving descendant, parent, or descendant of a parent, but the decedent is survived by one or more grandparents or descendants of grandparents, half of the estate passes to the decedent's paternal grandparents equally if both survive, or to the surviving paternal grandparent, or to the descendants of the decedent's paternal grandparents or either of them if both are deceased, the descendants taking by representation; and the other half passes to the decedent's maternal relatives in the same manner; but, if there is no surviving grandparent or descendant of a grandparent on either the paternal or the maternal side, the entire estate passes to the decedent's relatives on the other side in the same manner as the half.

The laws allowing for termination of parental rights have existed in West Virginia since at least 1941. See W. Va. Code § 49-6-5(3) (1941) (Code of 1943) (allowing a court to "terminate the parental rights and responsibilities of the parent or parents" when termination is "necessary for the welfare of a child"). Therefore, we may presume that the Legislature knew of this provision in 1992 when it revised the laws pertaining to intestate succession and included the above-quoted definition of the term "parent." See Syl. pt. 5, Dale v. Painter , 234 W. Va. 343, 765 S.E.2d 232 (2014) ("A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith." (quotations and citation omitted) ); Syl. pt. 12, Vest v. Cobb , 138 W. Va. 660, 76 S.E.2d 885 (1953) ("The Legislature, when it enacts legislation, is presumed to know of its prior enactments.").

One such question that comes to mind is the identity of the party who would be responsible for protecting an infant's right to such an inheritance, especially if the child is not placed in the care of a non-offending parent and has not been legally adopted prior to reaching the age of majority.

"As Chief Justice Marshall said more than a century and a half ago: [T]he intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words there is no room for construction." Watt v. Alaska , 451 U.S. 259, 285-86 (1981) (Stewart, J., dissenting) (quotation marks and citation omitted).

See W.Va. Code § 49-4-604(6) (2015) (providing court shall terminate parental rights of abusing parent).
"A majority of [ ] states have adopted a statutory exception to the mandatory succession by intestacy statutes applicable to children to extinguish the inheritance rights of 'bad parents.' " New Jersey Div. of Youth & Family Servs. v. M.W. , 398 N.J.Super. 266, 942 A.2d 1, 16 (N.J. Super. App. Div. 2007). Most "are directed to parental abandonment and non-support, although several preclude inheritance by a parent who has been convicted of crimes against the child including physical abuse, sexual abuse, and endangering the child's welfare." Id .

In 1969, the Uniform Probate Code was promulgated. Revised Article II of the Uniform Probate Code, 8 U.L.A. 76 at prefatory note (Supp. 1994). In 1990, a Revised Article II of the Uniform Probate Code was approved by the National Conference of Commissioners on Uniform State Laws. Id. at 75 at historical notes. See also Bruce H. Mann, Formalities and Formalism in the Uniform Probate Code , 142 U. Pa. L. Rev. 1033, 1048 (1994) ("The statutory rules of intestate succession are default rules that approximate what most testators do in their wills anyway-provide for their immediate families.").

The UPC provides:
(a) Any part of the intestate estate not passing to a decedent's surviving spouse under Section 2-102, or the entire intestate estate if there is no surviving spouse, passes in the following order to the individuals who survive the decedent:
(1) to the decedent's descendants by representation;
(2) if there is no surviving descendant, to the decedent's parents equally if both survive, or to the surviving parent if only one survives[.]
Id . § 2-103.

The UPC provides that a parent is barred from inheriting from or through a child of the parent if: the parent's parental rights were terminated or the child died before reaching 18 years of age and there is clear and convincing evidence that immediately before the child's death the parental rights of the parent could have been terminated under state law on the basis of nonsupport, abandonment, abuse, neglect, or other actions or inactions of the parent toward the child. UPC § 2.114(c).

For example, under West Virginia Code § 48-22-703 (2015), Michaelin would no longer be entitled to inherit from Mr. Hall's estate through intestate succession had Michaelin's mother remarried and Michaelin was adopted by her new step-father before Mr. Hall died.

See Syl. Pt. 2, In the Interest of Kaitlyn P. , 225 W.Va. 123, 690 S.E.2d 131 (2010) (" ' "In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." Syl. pt. 1, State ex rel. Cash v. Lively , 155 W.Va. 801, 187 S.E.2d 601 (1972).' Syllabus Point 4, State ex rel. David Allen B. v. Sommerville , 194 W.Va. 86, 459 S.E.2d 363 (1995).").

See Id . at 462-63, 686 S.E.2d at 602-03, Syl. Pt. 2 ("A circuit court terminating a parent's parental rights pursuant to W.Va. Code , § 49-6-5(a)(6), must ordinarily require that the terminated parent continue paying child support for the child, pursuant to the Guidelines for Child Support Awards found in W.Va. Code , § 48-13-101, et seq. [2001]. If the circuit court finds, in a rare instance, that it is not in the child's best interest to order the parent to pay child support pursuant to the Guidelines in a specific case, it may disregard the Guidelines to accommodate the needs of the child if the court makes that finding on the record and explains its reasons for deviating from the Guidelines pursuant to W.Va. Code , § 48-13-702, [2001].").

See also Banker v. Banker , 196 W.Va. 535, 546-47, 474 S.E.2d 465, 476-77 (1996) ("It is not for this Court arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." (citing Bullman v. D & R Lumber Company , 195 W.Va. 129, 464 S.E.2d 771 (1995) ; Donley v. Bracken , 192 W.Va. 383, 452 S.E.2d 699 (1994) ) ). Indeed, " 'the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.' " State ex rel. Blankenship v. Richardson , 196 W.Va. 726, 735, 474 S.E.2d 906, 915 (1996) (quoting Lewis v. Canaan Valley Resorts, Inc. , 185 W.Va. 684, 692, 408 S.E.2d 634, 642 (1991) ).