# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**June 15, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**JAMES M.,**
**Petitioner Below, Petitioner**

**vs.) No. 22-ICA-165**        (Cir. Ct. Kanawha Cnty. No. 20-D-471)

**JENNIFER M.,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner James M.[1] appeals the Kanawha County Circuit Court's September 15, 2022, order affirming the decision of the family court. James M. asserts that the family court's restriction of his parenting time is tantamount to the termination of his parental rights, which is a matter that can only be addressed in circuit court through an abuse and neglect proceeding. Respondent Jennifer M. timely filed a response in support of the circuit court's decision.[2] James M. did not file a reply[3].

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

James M. and Jennifer M. share three children, two of whom are minors, namely, A.M., age sixteen, and L.M., age fourteen (hereinafter "children"). On May 7, 2020, Jennifer M. filed a domestic violence petition against James M., which was granted, and she subsequently relocated to North Carolina with the children. James M. filed for divorce on June 18, 2020.

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n. 1 (1990).

[2] James M. is represented by Timothy J. LaFon, Esq. Jennifer M. is self-represented.

[3] James M. and Jennifer M. filed supplemental briefs pursuant to the April 21, 2023, order granting access to sealed documents.

1

On July 9, 2020, James M. filed a motion for emergency temporary hearing, wherein he alleged parental alienation. The emergency hearing was held on July 15, 2020, and the family court entered an order denying James M.'s motion on July 20, 2020. The family court denied James M.'s motion because the relief sought did not fall within the rules for emergency hearings and the domestic violence protection order ("DVPO") was still in effect through August 10, 2020. That same day, the family court entered a separate order that required James M. to undergo a parental fitness evaluation with Saar Psychological Group, PLLC. Upon James M.'s motion, the family court ordered Jennifer M. to also submit to a parental fitness evaluation.

On or about November 19, 2020, James M. filed a motion for immediate hearing, which was denied because the family court was still waiting on the parties' parental fitness evaluation reports. On December 9, 2020, James M. moved for a guardian ad litem to be appointed and requested holiday visitation. Jennifer M. filed a response objecting to James M.'s request for holiday time, wherein she stated that James M. had repeatedly threatened her with a gun. Both of James M.'s motions were denied by the family court. Jennifer M. then filed a motion requesting the family court to conduct an in camera interview with the children to allow the children to express their preferences regarding visitation with James M. Jennifer M.'s motion was granted.

The matter was scheduled for a final hearing on January 21, 2021. Although the interviews with the children were supposed to take place during the final hearing, the family court, without prior notice to James M., arranged to interview the children on January 4, 2021. James M. filed an objection to the interviews because he did not receive notice; James M. also filed an objection to the final hearing being designated as "final." James M.'s objections were denied, and the final hearing proceeded, as scheduled, on January 21, 2021. The final divorce order was entered on February 16, 2021. That order included the following directives: (1) the parties were instructed to undergo individual counseling, (2) the children were ordered to undergo reunification counseling with James M., (3) James M. was ordered to have no contact with the children outside of counseling sessions, and (4) the children were permitted to contact James M. at their discretion. These directives were based, at least in part, on the family court's in camera interviews of the children and the "contentious nature of the marriage and domestic violence allegations."

On March 18, 2021, James M. appealed the final divorce order to the circuit court, wherein he argued that the family court failed to follow Rules 8 and 9 of the West Virginia Rules of Practice and Procedure for Child Abuse and Neglect Proceedings.[4] The circuit

_____

[4] *See* Rule 17(a) of the West Virginia Rules of Practice and Procedure for Family Court, which states, "[R]ules 8 and 9 of the Rules of Procedure for Child Abuse and Neglect Proceedings shall govern the taking of testimony for children." James M. argued that, because he did not receive notice of the interviews, his attorney did not have the opportunity to file objections or prepare questions for the interview pursuant to Rule 8(b).

court agreed and remanded the case back to the family court for compliance with the applicable rules for in camera interviews of minors. Pursuant to the circuit court's directives on remand, the family court entered the following two orders: (1) an order entered on June 25, 2021, giving the parties fifteen days to submit questions or topics for a possible second in camera interview (in the event that the questions or topics had not already been addressed during the first in camera interview), and (2) an amended final divorce order entered on June 28, 2021, wherein the family court ruled that "releasing a copy of the in camera interview to the parties would be detrimental to the children and cause irreparable harm [which] constitutes exceptional circumstances as contemplated by Rule 8(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings." The family court elected not to conduct a second in camera interview of the children. James M. did not appeal the June 28, 2021, amended final divorce order.

On October 27, 2021, James M. filed another motion for emergency hearing, stating that he had participated in therapy and had not engaged in parenting time in approximately eighteen months. Jennifer M. filed a response, and a review hearing was held on January 3, 2022. On January 24, 2022, the family court entered an order requiring one visitation between James M. and the children. The visit was to be supervised by Saar Psychological Group in order to determine whether additional visitation was appropriate.

On April 14, 2022, another review hearing was held. The family court entered its order on April 20, 2022, stating that Saar Psychological Group determined that forcing the children to see James M. would cause them irreparable psychological harm. Based on the Saar Psychological Group's recommendation, in addition to the children having expressed during the in camera interviews their desire for no visitation, the family court found that it was not in the children's best interest to require contact with James M., but that the children should have the discretion to contact James M. if they desire.

James M. appealed the family court's April 20, 2022, order to the circuit court, and the hearing was held on August 24, 2022. By an order entered September 15, 2022, the circuit court affirmed the family court's decision, holding that the family court did not exceed its jurisdiction when it decided not to allow James M. any visitation. This was the only issue addressed by the circuit court. It is from the September 15, 2022, order that James M. now appeals.

For these matters, we are guided by the following standard of review:

> "In reviewing a final order entered by a circuit court judge upon review of, or upon a refusal to review, a final order of a family court judge,

---

Additionally, James M. argued that the family court failed to state in its final order why attorneys were not permitted to be present as required by Rule 8(b).

3

we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl. Pt., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

*Amanda C. v. Christopher P.*, No. 22-ICA-2, __ W. Va. __, __, __ S.E.2d __, __, 2022 WL 17098574, at *3 (Ct. App. Nov. 18, 2022); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court order).

On appeal, James M. raises one assignment of error. James M. contends that the circuit court erred by affirming the family court's decision to terminate all of his parental visitation. According to James M., terminating all of his parental visitation amounts to terminating his parental rights, and the family court does not have jurisdiction to terminate parental rights. Further, James M. contends that he had no ability to rebut the allegations of abuse because he was not informed of what was said during the in camera interviews with the children.[5]

James M.'s sole assignment of error is resolved by statutory law. West Virginia Code § 48-9-209(a)(3) (2021) states, "upon receipt of credible information thereof, the court shall determine whether a parent who would otherwise be allocated responsibility under a parenting plan. . .[h]as committed domestic violence." Moreover, if a parent is found to have engaged in domestic abuse, "the court shall impose limits that are reasonably calculated to protect the child . . . from harm[,]" which includes allocating "exclusive custodial responsibility to one of [the parents]." W. Va. Code § 48-9-209(b)(1)(c) (2021).

Here, the family court determined that James M. had committed domestic violence and stated in its order that, "the children disclosed very sensitive information about their

---

[5] While not included as separate assignments of error, James M. now contends that he had no ability to rebut the allegations made by his daughters and wife because he was not allowed to participate in the interview process and because the family court sealed certain records of Dr. Saar. Any allegation concerning the family court's failure to adhere to the requirements for in camera interviews has been waived due to James M.'s failure to appeal the June 28, 2021, Amended Final Order from the family court. This order was entered on remand from the circuit court on the issue of the interviews. Any allegation concerning the sealed records of Dr. Saar is also misplaced. James M. never made a motion to view the sealed records below and did not initially raise this issue on appeal. James M. only moved to view these records after this Court made them a part of the appellate record. Accordingly, as James M. never addressed this issue with the family court, it is not properly preserved for appeal. Additionally, all allegations contained in Dr. Saar's records are available to James M. from other records such as the documents in the domestic violence protective order litigation.

4

father and witnessing years of domestic abuse with him being the aggressor." Dr. Saar also recommended no parental visitation for James M. Therefore, the family court did not abuse its discretion in denying James M. parenting time.

Further, West Virginia Code § 48-9-402(b)(3)-(4)(2022) provides, in part, as follows:

> [t]he court may modify any provisions of the parenting plan without the showing of changed circumstances . . . if the modification is in the child's best interests, and the modification:
> . . .
> (3) Is necessary to accommodate the reasonable and firm preferences of a child who, has attained the age of 14; or
>
> (4) Is necessary to accommodate the reasonable and firm preferences of a child who is under the age of 14 and, in the discretion of the court, is sufficiently matured that he or she can intelligently express a voluntary preference;

For almost one hundred years, the Supreme Court of Appeals of West Virginia has held that "[i]n a contest over the custody of an infant, the welfare of the child is the polar star by which the discretion of the court is to be guided." Syl., *State ex rel. Palmer v. Postlethwaite*, 106 W. Va. 383, 145 S.E. 738 (1928). In the present case, the family court interviewed both children and determined that based on a totality of the circumstances, which included the children's reasonable and firm preferences and the expert opinions of Saar Psychological Group, it would not be in the children's best interest to force them to have parenting time with James M. This finding by the family court is consistent with West Virginia Code § 48-9-402(b)(3)-(4) and within the court's discretion.

James M. argues that the family court's order denying him custodial rights amounts to terminating his parental rights.[6] However, it appears James M. is confusing a family

---

[6] There is more to parental rights than custody and visitation:

> A final order terminating a person's parental rights, as the result of either an involuntary termination or a voluntary relinquishment of parental rights, completely severs the parent-child relationship, and, as a consequence of such order of termination, the law no longer recognizes such person as a "parent" with regard to the child(ren) involved in the particular termination proceeding.

Syl. Pt. 4, *In re Cesar L.*, 221 W. Va. 249, 654 S.E.2d 373 (2007). Further, the termination of parental rights would mean that a parent could no longer inherit from a child through

court's jurisdiction to allocate custodial responsibility and parenting time based on the provisions of Chapter 48 of the West Virginia Code with the termination of parental rights in an abuse and neglect proceeding held before a circuit court pursuant to Chapter 49 of our Code. These proceedings are inherently different both in substance and jurisdiction. Here, the family court acted within its authority by allocating custody of the children, pursuant to West Virginia Code § 48-9-209(a)(3) and § 48-9-209(b)(1)(c), to Jennifer M. Nothing in the order affects the status of James M. as the legal parent of the children. [7]

Accordingly, we affirm the circuit court's September 15, 2022, order.

Affirmed.

---

intestate succession. *See Hall v. Hall*, 241 W. Va. 12, 21, 818 S.E.2d 838, 847 (2018). Additionally, consent for adoption would not be a requirement for a parent whose rights have been terminated. *See* W. Va. Code § 48-22-301(b)(1)(2018); *In re C.S.*, No. 11-0233, 2011 WL 8199178, at *2 (W. Va. Sept. 26, 2011) (noting that adoption by stepfather "could not be achieved if petitioner's parental rights were left intact."). Lastly, it is also important to note that orders concerning visitation may be modified at any time before a child reaches the age of majority.

[7] Although we find no prejudicial error in the family court's order, as affirmed by the circuit court, we would be remiss if we failed to mention our concern with the family court's in camera interview procedures in this matter. While it does not change the outcome here, to avoid confusion or give rise to this assignment of error in the future, we encourage family courts to strive to adhere to the procedure outlined in Rule 8 of the Rules of Procedure for Child Abuse and Neglect Proceedings concerning notice, attorney participation, and recording.

Rule 8(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings specifies that attorneys may be present during in camera interviews of children. If the court determines that children may be intimated by the presence of attorneys, the court shall have the interview recorded and make the recording available to the attorneys before the hearing resumes. Under exceptional circumstances, the court may elect not to make the recording available, but must include its reasoning on the record. Additionally, attorneys must be given a reasonable opportunity to submit questions or topics to the court before interviews are conducted.

**ISSUED:** June 15, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen